CHRYSLER CORPORATION v CIVIL RIGHTS COMMISSION

1. CIVIL RIGHTS—CIVIL RIGHTS COMMISSION—CONSTITUTIONAL LAW—
   INVESTIGATORY AND ENFORCEMENT POWERS—LEGISLATIVE CON-
   TROL.

   The constitutional provision which established the Civil Rights
   Commission gives broad investigatory and enforcement powers
   to the commission, but it also provides for legislative control
   over the manner in which these powers may be exercised
   (Const 1963, art V, § 29).

2. CIVIL RIGHTS—CIVIL RIGHTS COMMISSION—COMPLAINTS—LIMITA-
   TION PERIOD—DISCRIMINATORY DISCHARGE.

   Complaints filed with the Civil Rights Commission must be filed
   within 90 days of the alleged act of discrimination; therefore,
   the Civil Rights Commission was barred from the consideration
   of four complaints against an employer alleging discriminatory
   discharge where the complaints were filed almost five months
   after the discharge of the employees.

3. CIVIL RIGHTS—CIVIL RIGHTS COMMISSION—EMPLOYEE'S REMEDIES—
   EMPLOYMENT DISCRIMINATION—GRIEVANCES—LIMITATION PE-
   RIOD.

   The independent source of the various remedies available to an
   employee subjected to alleged discrimination precludes the
   Court of Appeals from holding that the pursuit of one remedy
   by filing a grievance under a collective bargaining agreement
   tolls the 90-day limitation period for filing complaints with the
   Civil Rights Commission.

4. COURTS—COURT RULES—SUPERINTENDING CONTROL—ADMINISTRA-
   TIVE TRIBUNAL—CIVIL RIGHTS COMMISSION—OTHER REMEDIES—
   LIMITATION PERIOD.

   An order of superintending control should not be issued if an-
   other plain, speedy and adequate remedy is available to the
   party seeking the order; however, this does not require a
   judicial "hands off" policy towards an administrative tribunal

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 15 Am Jur 2d, Civil Rights § 63.
[2–4] 15 Am Jur 2d, Civil Rights § 58 *et seq.*

acting without authority; where the Civil Rights Commission erred in its ruling on the preliminary question of its power to act upon complaints filed after the 90-day statutory limitation period and the ruling came 2-1/2 years after the plaintiff raised the question by a motion to dismiss, the Court of Appeals does not view an appeal from the final order of the Civil Rights Commission, after what probably would be lengthy and costly proceedings, as a "plain, speedy, and adequate" means to correct a preliminary error (GCR 1963, 711.2).

Appeal from Ingham, James T. Kallman, J. Submitted February 10, 1976, at Lansing. (Docket No. 22459.) Decided March 25, 1976.

Complaint by Chrysler Corporation for a mandatory order of superintending control against the Civil Rights Commission. The order was granted, directing the defendant to dismiss four cases, then pending before it, involving the plaintiff. Defendant appeals. Affirmed.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *Lawrence M. Kelly) (A. William Rolf,* of counsel), for plaintiff.

*Philip Green,* Special Counsel, for defendant.

Before: BRONSON, P. J., and McGREGOR and R. M. MAHER, JJ.

PER CURIAM. Plaintiff sought and was granted an order of superintending control by the Ingham County Circuit Court. The order directed defendant Civil Rights Commission (CRC) to dismiss four cases, involving plaintiff, then pending before it. Defendant appeals this order.

On October 17, 1970, four former employees of plaintiff filed complaints with the CRC. All alleged racially motivated discharge by plaintiff on May 26, 1970. The same employees had filed union grievances on June 5, 1970, claiming wrongful

discharge. The grievances did not raise the issue of racial discrimination and did not result in the employees' reinstatement.

On April 16, 1971, plaintiff received a notice to appear before the CRC on April 29, 1971, for a hearing on the discharge of the four employees. The notice also ordered plaintiff to produce at the hearing various records and documents relating to its Eldon Avenue Axle Plant, where the four men had been employed.[1]

---

[1] The CRC sought production of the following records and documents:

1. The initial job assignment, date of hire, pay rate and job classification assignment of all hourly employees hired at the Eldon facility since January, 1967, to the present, indicating the race of each employee.

2. Copies of the following reports written at the Eldon facility since January, 1967, to the present, indicating the race of each employee:

A. Death or Serious Injury reports

B. Injury notice

C. Medico-Legal Report (write up)

D. Monthly Activity Report

E. Lost Time Report

F. Notice of Occupational Disability

G. Employee's Basic Report of Injury—Form 100

H. Supervisor's Report of Injury

3. Copies of all (BLS-Z-16) reports filed by the Eldon facility since January, 1967, to the present;

4. Name, race, job classification and plant seniority of each employee who has applied for a skilled trades position at Eldon since January, 1967, to the present, indicating the disposition of each application;

5. Current seniority lists for all departments at Eldon, indicating race of each individual;

6. Copies of all requests for intradepartmental, interdepartmental and plant transfers made at the Eldon Plant since January, 1967, to the present, indicating the race of each employee and the disposition of each request;

7. Copies of all preventive maintenance orders, machine repair orders and moving stock repairs at the Eldon plant since January, 1967, to the present;

8. The race, date of hire and job classification of each employee (hourly) who has been transferred to or from Eldon since January, 1967, to the present; and

9. Copies of EEO-1 forms from January, 1967, to the present for the Eldon facility.

Plaintiff filed a motion with the CRC on April 27, 1971, to dismiss the complaints and to revoke the notice to produce records and documents. The motion claimed that the CRC lacked jurisdiction in the matter because the complaints were untimely. The CRC did not immediately act on this motion, and on April 29, 1971, plaintiff brought an action against the CRC in Ingham County Circuit Court. Plaintiff sought an order of superintending control directing the CRC to dismiss the complaints, or, in the alternative, an order directing the CRC to stay the proceedings before it pending disposition of the motion to dismiss that plaintiff had filed on April 27.

An order to show cause issued and, after a hearing, the circuit court on May 21, 1971, ordered the CRC to stay its notice order of April 16, 1971, until plaintiff's motion of April 27 was heard and decided. The court retained jurisdiction to later consider plaintiff's request for an order of superintending control directing dismissal of the complaints.

Hearings on plaintiff's motion to dismiss the complaints were concluded in April, 1972. The CRC denied plaintiff's motion in an opinion and order issued November 27, 1973.

On January 7, 1974, plaintiff filed a motion for an order of superintending control in the circuit court. The court on November 19, 1974, issued its opinion, which 10 days later became its order, directing the CRC to dismiss the four complaints against plaintiff.

The CRC questions the appropriateness of an

10. Copies of appraisals on foreman candidates approved and rejected at Eldon Avenue; for each department from December, 1969, to present indicating department, name, race, job classification and disposition of request.

order of superintending control in this situation as well as the correctness of the court's decision that the CRC lacked power to act upon the four complaints.

The constitution of 1963 created the CRC and defined its function:

"It shall be the duty of the commission *in a manner which may be prescribed by law* to investigate alleged discrimination against any person because of religion, race, color or national origin in the enjoyment of the civil rights guaranteed by law and by this constitution, and to secure the equal protection of such civil rights without such discrimination. The legislature shall provide an annual appropriation for the effective operation of the commission." (Emphasis supplied.) Const 1963, art 5, § 29.

While the constitution gave broad investigatory and enforcement powers to the CRC, it also provided for legislative control over the manner in which these powers may be exercised. *Michigan Civil Rights Commission v Clark,* 390 Mich 717; 212 NW2d 912 (1973), *Civil Rights Commission v Chrysler Corp,* 64 Mich App 393; 235 NW2d 791 (1975), see Cramton, *The Powers of the Michigan Civil Rights Commission,* 63 Mich L Rev 5, 16 (1964).

MCLA 37.4; MSA 3.548(4) states: "A complaint alleging an unlawful discriminatory practice is subject to the same procedure as a complaint alleging an unfair employment practice under Act No. 251 of the Public Acts of 1955, being §§ 423.301 to 423.311 of the Compiled Laws of 1948." This legislative control over the CRC procedure is authorized, as indicated above, by the constitutional provision creating the CRC. Section 7(b) of 1955 PA 251, MCLA 423.307(b); MSA

17.458(7)(b), provides that a complaint may be filed within 90 days of the alleged act of discrimination.

This 90-day limitation, made applicable to complaints filed with the CRC, barred consideration by the CRC of the four complaints alleging discriminatory discharge by plaintiff, since they were filed almost five months after the discharges. In the recent case of *Civil Rights Commission v Chrysler Corp, supra,* this Court decided that the provision in MCLA 423.307(b); MSA 17.458(7)(b), for a verified complaint in writing is a mandatory prerequisite for action by the CRC. There is no reason to view differently the provision for filing a complaint within 90 days of the alleged discriminatory act. In *Pompey v General Motors Corp,* 385 Mich 537; 189 NW2d 243 (1971), the Supreme Court, while noting that the 1963 constitution elevated the formerly statutory right to be free from discriminatory employment practices, stated that the statutory limitation period remained intact and barred complaints filed after the 90-day limitation period had run. 385 Mich at 550, n 11.

The CRC asks this Court to hold that the limitation period was tolled by the filing of grievances under the collective bargaining agreement. We are not inclined to disregard the recent recognition given to the independence of employees' contractual and constitutional or statutory rights to be free from discrimination in employment. *Alexander v Gardner-Denver Co,* 415 US 36; 94 S Ct 1011; 39 L Ed 2d 147 (1974), *Civil Rights Commission v Chrysler Corp, supra, Pompey v General Motors Corp, supra,* recognized the independence of statutory and judicial remedies in this area.

The independent source of the various remedies available to an employee subjected to alleged discrimination precludes us from accepting the CRC's

claim that pursuit of one remedy should toll the limitation period applicable to another remedy. *Cf. Johnson v Railway Express Agency, Inc,* 421 US 454; 95 S Ct 1716; 44 L Ed 2d 295 (1975).

Defendant CRC contends that GCR 1963, 711.2 should have prevented the circuit court's issuance of an order of superintending control. GCR 1963, 711.2 expresses the policy that an order of superintending control should not be used if "another plain, speedy and adequate remedy is available to the party seeking the order".

We do not think that the court abused its discretion or acted in disregard of the policy expressed in GCR 1963, 711.2. We do not read GCR 1963, 711.2 as requiring a judicial "hands off" policy towards an administrative tribunal acting without authority. *Cf. Radke v Employment Security Commission,* 37 Mich App 104; 194 NW2d 395 (1971). It only requires consideration of other avenues of review open to the party requesting an order of superintending control. The CRC erred in ruling on the preliminary question of its power to act upon complaints filed after the 90-day limitation period, and the ruling came some 2-1/2 years after plaintiff raised the question by its motion to dismiss. It is extremely difficult to view an appeal from the final order of the CRC, after what, by all indications, would be lengthy and costly proceedings, as a "plain, speedy and adequate" means to correct a preliminary error.

Affirmed.