## MICHIGAN BELL COMMUNICATIONS, INC v MICHIGAN PUBLIC SERVICE COMMISSION

Docket No. 81467. Submitted January 8, 1986, at Lansing. Decided October 6, 1986. Leave to appeal applied for.

Michigan Bell Telephone Company decided to form a wholly owned subsidiary, Michigan Bell Communications, Inc., to market and service business and residential customer premises equipment (CPE). Michigan Bell filed a request with the Public Service Commission for authority to issue securities on behalf of MBCI. However, both MBCI and Michigan Bell reserved their objection to any regulation of MBCI's issuance of stock and securities by the PSC, contending that the statute providing for PSC regulation of the issuance of securities by a regulated utility such as Michigan Bell did not apply or, alternatively, that jurisdiction over MBCI's issuance of stock or securities had been preempted by federal regulation. After a public hearing, a PSC hearing officer issued a report and recommended that the PSC find that it did not have jurisdiction to regulate the issuance of securities by MBCI. The PSC rejected the recommendation and issued an opinion and order asserting jurisdiction over MBCI's stock issuance and approving the stock issuance subject to several reporting requirements, which were intended to facilitate the PSC's oversight functions. MBCI's request for a rehearing was denied by the PSC. The Court of Appeals thereafter granted MBCI leave to appeal.

The Court of Appeals *held:*

1. MBCI and Michigan Bell are separate corporate entities. The record before the PSC is absolutely devoid of any basis for disregarding the separate legal existence of MBCI.

2. Under federal deregulation and the divestiture of Ameri-

REFERENCES

Am Jur 2d, Corporations §§ 42 *et seq.*

Am Jur 2d, Public Utilities §§ 230 *et seq.,* 255 *et seq.*

Am Jur 2d, Statutes §§ 145, 146, 223, 370.

Supreme Court's views on weight to be accorded to pronouncements of legislature, or members of legislature, respecting meaning or intent of previously enacted statute. 56 L Ed 2d 918.

See also the annotations in the Index to Annotations under Preemption; Securities Regulation; Statutes; Utilities.

can Telephone & Telegraph, the CPE market is open to a broad spectrum of vendors and servicers who are largely unregulated. Therefore, while MBCI is a wholly owned subsidiary of Michigan Bell, a regulated public utility, MBCI is nevertheless a separate legal entity and is not a public utility, for purposes of the statute in question, over which the PSC may assert jurisdiction to regulate its issuance of stock.

3. MBCI does not conduct an integral part of Michigan Bell's business. The PSC may not therefore assert jurisdiction pursuant to the statute to regulate MBCI's issuance of stock based on a claim that MBCI is a public entity conducting an integral part of the business of a public utility.

4. Under a strict reading of the statute, MBCI would not fall within its purview since MBCI would not be owning, conducting, managing, operating or controlling the CPE it sells or services while the CPE are being used in the business of transmitting messages by telephone to the public, directly or indirectly.

.5. The PSC's policy arguments in support of regulation of MBCI's issuance of securities were found by the Court of Appeals to be without merit.

6. If the Court of Appeals were to hold that the PSC could regulate MBCI's stock issuance pursuant to the statute, the Court would nevertheless hold that, to the extent that the PSC would disallow securities issuance if there would be, in the PSC's judgment, either undercapitalization or overcapitalization in conflict with a ruling by the FCC relative to capitalization levels as required by federal regulations, the statute has been preempted by federal law.

Reversed.

1. CORPORATIONS — FRAUD.

A corporate entity will not be disregarded in the absence of proof of fraud, sham, or other improper use of the corporate form.

2. STATUTES — JUDICIAL CONSTRUCTION.

The primary object of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature; the language of the statute is the best source for ascertaining the intent of the Legislature.

3. STATUTES — JUDICIAL CONSTRUCTION — DICTIONARY DEFINITIONS.

Statutory language should be construed according to the common and approved usage of the language and resort to dictionary definitions is an appropriate method of achieving this result.

4. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — SECURITIES REGULATION.

The Public Service Commission's power to regulate the issuance of securities by public utilities is not limited to those public utilities whose rates are regulated by the Public Service Commission but applies to all companies enumerated in the statute which confers such power (MCL 460.301; MSA 22.101).

5. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — SECURITIES REGULATION.

The issuance of securities by a wholly owned subsidiary of a public utility is not subject to regulation by the Public Service Commission where the subsidiary is a legally separate entity from its parent and is neither a public utility nor a public entity conducting an integral part of the business of its parent public utility (MCL 460.301; MSA 22.101).

6. STATUTES — PREEMPTION — PARALLEL REGULATIONS.

State law, where state and federal statutes have the same underlying purpose, is preempted if the means chosen by the state to achieve the purpose interfere with the means chosen by Congress.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Albert Ernst* and *Jon R. Robinson*), *H. Wayne Wells* and *John M. Dempsey,* for Michigan Bell Communications, Inc.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Don L. Keskey* and *Elizabeth R. Schwartz,* Assistant Attorneys General, for the Public Service Commission.

Before: WAHLS, P.J., and MACKENZIE and R. L. TAHVONEN,* JJ.

R. L. TAHVONEN, J. On December 29, 1983, Michigan Bell Telephone Company filed, with appellee Michigan Public Service Commission, a request for authority to issue securities. The request was on behalf of a then unformed, wholly owned subsid-

* Circuit judge, sitting on the Court of Appeals by assignment.

iary which became appellant Michigan Bell Communications, Inc. (MBCI) when formed on March 8, 1984. The purpose of MBCI was to market and service business and residential customer premises equipment (CPE) and act as one of the nonexclusive sales agents for certain of Michigan Bell's central office services.

Michigan Bell's original application was amended March 8, 1984. MBCI requested authority from the PSC to issue and sell one share of $1 par value stock to Michigan Bell and receive up to $5,000,000 of equity contribution to be used for corporate purposes. At the same time, however, MBCI and Michigan Bell reserved their objection to any regulation of MBCI's issuance of stock and securities, based on the ground that the issuance was not subject to 1909 PA 144, MCL 460.301(1); MSA 22.101(1) (§ 301[1]). Alternatively, they reserved their objection to regulation based on a theory that jurisdiction over MBCI's issuance of stock or securities had been preempted by federal regulation. A PSC hearing officer directed the parties to brief the issue of the jurisdiction of the PSC to regulate MBCI's offering of securities.

After an April 9, 1984, public hearing, the hearing officer issued a report and recommendation on May 10, 1984. The recommendation was that the PSC find it did not have jurisdiction to regulate the issuance of securities by MBCI. That recommendation was based on a finding that MBCI would not conduct an integral part of the business of Michigan Bell. The hearing officer concluded that under *Michigan Gas Storage v Public Service Comm*, 405 Mich 376; 275 NW2d 457 (1979), reh den 406 Mich 1118 (1979), and *Indiana & Michigan Power Co v Public Service Comm*, 405 Mich 400; 275 NW2d 450 (1979), reh den 406 Mich 1119 (1979), MBCI was not subject to the PSC's regulatory authority. The

recommendation was also based on a finding that MBCI was not a public utility subject to regulation under § 301(1), citing *Ram Broadcasting of Michigan, Inc v Public Service Comm,* 113 Mich App 79; 317 NW2d 295 (1982). Finally, the hearing officer rejected the PSC staff's argument that regulation of MBCI's issuance of securities was necessary to monitor the intercompany transactions between Michigan Bell and MBCI to protect Michigan Bell customers from improper cost subsidization. The basis for this rejection was that Michigan Bell rate cases were adequate for that purpose.

The PSC issued its August 1, 1984, opinion and order rejecting the hearing officer's report and recommendation and asserting jurisdiction over MBCI's issuance of securities. The PSC gave approval for the requested issuance of securities, but required MBCI to file a report as to the actual terms and conditions of the issuance, asserting the PSC's authority to review MBCI's books and records relating to intercompany transactions, and requiring MBCI to file a list of shared administrative services, including equitable cost accounting and allocation procedures that would properly identify costs to be charged to Michigan Bell.

The basis for the PSC's assertion of jurisdiction was § 301(1), which provides as follows:

A person, corporation, or association, or a lessee or trustee of a corporation or association, except a municipal corporation or the owner of a renewable resource power production facility as provided in section 1a, organized or authorized to do business under the laws of this state, owning, conducting, managing, operating, or controlling a plant or equipment within this state used wholly or in part in the business of transmitting messages by telephone or telegraph, producing or furnishing heat, artificial gas, light, water, or mechanical power to

the public, directly or indirectly, a railroad, interurban railroad, or other common carrier, or a corporation, association, or individual exercising or claiming the right to carry or transport natural gas for public use, directly or indirectly, or petroleum oil by or through a pipeline or engaged in the business of piping or transporting natural gas for public use, directly or indirectly, or engaged in the business of purchasing natural gas for distribution may issue stocks, bonds, notes, or other evidences of indebtedness payable at periods of more than 12 months after the date of issuance, if necessary for the acquisition of property, the construction, completion, extension, or improvement of facilities or for the improvement or maintenance of service or for the discharge or lawful refunding of obligations and may issue stock to represent accumulated earnings invested in capital assets and not previously capitalized, if the Michigan public service commission issues an order authorizing the issue and the amount of the issue, and states that in the opinion of the commission the use of the capital or property to be acquired to be secured by the issue of the stock, bonds, notes, or other evidences of indebtedness, is reasonably required for the purposes of the person, corporation, or association, or that the issue of the stock fairly represents accumulated and undistributed earnings invested in capital assets and not previously capitalized. Appproval of securities does not presume that the projects to be constructed or property to be acquired will be included in the company's rate base.

The PSC found that MBCI was a corporation organized or authorized to do business under the laws of this state, owning, conducting, managing or controlling a plant or equipment within the state used wholly or in part in the business of transmitting messages by telephone. Therefore, this issuance of stock was subject to PSC approval. Under both *Michigan Gas Storage* and *Indiana &*

*Michigan Power,* a wholly owned subsidiary not subject to rate regulation by Michigan could be subjected to securities regulation if it conducted an integral part of the regulated parent's business.

The PSC found that MBCI was doing an integral part of Michigan Bell's business because CPE was held to be an essential link in customers' telephone service. The PSC also found that MBCI's activities could have significant impact on Michigan Bell's investors and ratepayers.

Finally, the PSC recited the facts of an unidentified case it had recently decided in which a regulated entity, Michigan Consolidated Gas Company, requested permission to invest in a nonregulated entity, the Detroit Riverfront Development. As a requirement for approval of that investment, the PSC required the regulated entity to file a list of shared administrative services related to such activities. The PSC found "similar protections" were appropriate in this case, thus justifying the imposition of the reporting requirements on MBCI as detailed above.

After an unsuccessful application for rehearing was denied by opinion and order of November 6, 1984, MBCI filed an application for leave to appeal with this Court on November 7, 1984. For the reasons explained below, we hold that the PSC was without jurisdiction to regulate MBCI's issuance of securities and reverse the PSC's opinion and order of August 1, 1984.

Analysis of the actions of MBCI and regulatory actions and powers relative to MBCI requires a determination of the question of whether MBCI's corporate existence is to be recognized or disregarded. Under *Gottlieb v Arrow Door Co,* 364 Mich 450, 452; 110 NW2d 767 (1961), the corporate form and separate existence of even a one-person, wholly owned corporation should be recognized

absent some showing of fraud, sham or other improper use of the corporate form justifying a court's piercing the corporate veil. The record before the PSC, brought to this Court, is absolutely devoid of any basis for disregarding the separate legal existence of MBCI. In fact, at oral argument, the parties agreed that, in the course of federal divestiture proceedings, Michigan Bell's entry into the CPE market through such a wholly owned subsidiary was contemplated both by the courts and the Federal Communications Commission.

This Court's duty when interpreting a statute is set forth in *In re Condemnation of Lands*, 133 Mich App 207, 210-211; 349 NW2d 261 (1984):

> In our endeavor to find the appropriate meaning of the phrase "ultimate award", we begin with the basic rules of statutory construction. The primary object of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Franks v White Pine Copper Division, Copper Range Co*, 122 Mich App 177, 183; 332 NW2d 447 (1982). The language of the statute is the best source for ascertaining this intent. *Espinoza v Bowerman-Halifax Funeral Home*, 121 Mich App 432, 436; 328 NW2d 657 (1982). Statutes must be construed according to the common and approved usage of the language. A resort to dictionary definitions is an appropriate method of achieving this result. *Fenton Area Public Schools v Sorenson-Gross Construction Co*, 124 Mich App 631, 639; 335 NW2d 221 (1983).

There is nothing in the language of the statute which suggests that rate regulation is necessary before there can be securities regulation, and both *Michigan Gas Storage* and *Indiana & Michigan Power* specifically held that there could be securities regulation without rate regulation. Thus, the fact that MBCI's rates are not regulated by the PSC

is not determinative of the jurisdictional issue raised in this case.

The first issue is whether, under the statute as interpreted in *Michigan Gas Storage* and *Indiana & Michigan Power,* the entity to be regulated must be a public utility. It is obvious that, if an entity is a public utility, the statute applies. Thus, there are two questions which may be answered by the same analysis. First, is MBCI a public utility for the purposes of the statute? Second, are some entities, like MBCI, even if they are not public utilities, still subject to regulation under the statute because they conduct an integral part of their parent utility's business?

The answer to both questions is to be found in *Michigan Gas Storage,* 405 Mich 384-385, 387, 391-392:

> Evidence adduced at the hearing by [Michigan Gas] Storage Company established that it is a corporation organized and existing under the laws of the State of Michigan and is a wholly owned subsidiary of Consumers Power Company.
>
> As authorized by its articles of incorporation, Storage Company is engaged in the purchase and transportation of natural gas in interstate commerce and the sale of such gas at wholesale for resale for ultimate public consumption. Storage Company purchases its natural gas supply from Panhandle Eastern Pipe Line Company and sells it to its sole customer, Consumers Power Company. Comsumers Power Company is a public utility which operates in the State of Michigan and sells gas at retail to the public for domestic, commercial and industrial use.
>
> As a natural gas company transporting and selling gas in interstate commerce, the operation of Storage Company was within the jurisdiction of the Federal Power Commission (FPC) under the regulatory powers granted in the Natural Gas Act,

15 USC 717 *et seq.* At the time this case was initiated, the Federal Power Commission was the regulatory authority under the Federal Power Act. Under 42 USC 7101 *et seq.,* the Department of Energy Organization Act, the functions of the FPC were transferred to the Department of Energy and the Federal Energy Regulatory Commission.

\* \* \*

As established at the hearing, it appears that Storage Company's operations consist of the purchase, transportation, storage and sale of natural gas. The Company's supply of gas is purchased from an interstate pipe line company. All of that gas is then sold to Consumers Power Company which owns all of the outstanding stock in Storage Company. There is no evidence in the record that Storage Company owns any facilities or significiant assets that are located outside the state. Nor is there any evidence whether, or how much, if any, of the gas sold to Consumers is ultimately consumed outside the state.

As a company engaged in the purchase and transportation of natural gas acquired from an interstate pipe line, which gas is sold at wholesale for resale, Storage Company is subject to the provisions of the Federal Natural Gas Act, *supra.* Under that act the Federal Power Commission exercised regulatory authority over Storage Company's rates, services and facilities. The Michigan Public Service Commission does not assert jurisdiction over these aspects of the Company's activities.

\* \* \*

Storage Company makes an additional argument that, based on the language of MCL 460.301; MSA 22.101, the Commission does not have jurisdiction over its securities. The Company urges that it is not a public utility for state law purposes because the Commission does not exercise jurisdiction over its rates and, more specifically, that it is not "[a] corporation . . . exercising or claiming the right to carry or transport natural gas for public use, directly or indirectly . . . ."

It suffices to say that we agree with the Court of Appeals that the clear import of the language of the statute is to include a company like Storage Company. It is a wholly owned subsidiary of a utility operating within the state and, pursuant to its articles of incorporation, it sells gas only to that company, thereby conducting an integral part of the business of its parent of serving the people of this state.

We hold that Storage Company is within the jurisdiction of the Commission granted by MCL 460.301; MSA 22.101.

Storage Company, the subsidiary in *Michigan Gas Storage,* was a utility and did conduct an integral part of its parent's business. It purchased and transmitted natural gas under a comprehensive regulatory scheme, which identifies it as a utility. See *Williams v Standard Oil Co,* 278 US 235; 49 S Ct 115; 73 L Ed 287 (1929). The wholly owned subsidiary bought natural gas solely for the purpose of selling it to its parent, and its parent bought all the natural gas the subsidiary provided.

By comparison, and in striking contrast, the CPE market is one open to a broad spectrum of vendors and servicers under the federal deregulation and divestiture of American Telephone & Telegraph. MBCI's rates and practices, along with those of other retail vendors of CPE, are essentially unregulated. MBCI is not a utility for purposes of § 301(1).

Neither can this Court find that MBCI conducts an integral part of Michigan Bell's business. Michigan Bell must, of course, have some sort of equipment from which and to which to transmit telephone messages. However, provision of that equipment is denied Michigan Bell under the federal divestiture actions. It does not make sense that an integral part of a corporation's business could be an activity in which the business is forbidden to

engage. Further, by analogy, every kind of appliance which used electric power would have to be considered an integral part of the business of generating and supplying electrical power to the public, but such an expansive interpretation of the word "integral" seems unwarranted in light of the facts of *Michigan Gas Storage* and *Indiana & Michigan Power.* This confirms the dictionary definition of "integral": "Essential to completeness . . . lacking nothing essential . . . ." *Webster's New Collegiate Dictionary* (1973), p 600. Another telling blow against the ᴘsᴄ's argument is the apparently uncontested fact that Michigan Bell continued in business after January 1, 1984, without conducting ᴄᴘᴇ vending operations. The ᴘsᴄ's argument that a different but related corporate entity was conducting the ᴄᴘᴇ operation again would have this Court ignore separate corporate identities without any basis in fact or law. Finally, the ᴘsᴄ argues that ᴄᴘᴇ is an integral part of Michigan Bell's business because of MCL 484.51; MSA 22.1431, which requires a telephone company to provide telephones. In light of the fact that federal authorities have precluded Michigan Bell from offering ᴄᴘᴇ, the state regulation must be invalid because it is preempted. *Florida Lime & Avocado Growers, Inc v Paul,* 373 US 132; 83 S Ct 1210; 10 L Ed 2d 248 (1963).

Since ᴍʙᴄɪ is neither a public utility nor a public entity conducting an integral part of the business of a public utility, § 301(1) does not give authority to the ᴘsᴄ to regulate its issuance of securities.

Assuming for the sake of argument that ᴍʙᴄɪ were not excluded from ᴘsᴄ regulation under § 301 despite the foregoing arguments, ᴍʙᴄɪ's interpretation of the statute is correct and again precludes the ᴘsᴄ's exercise of securities-regulation jurisdic-

tion. The statute would allow the PSC's regulation of " . . . [a Michigan] corporation . . . owning, conducting, managing, operating or controlling a plant or equipment within this State used wholly or in part in the business of transmitting messages by telephone . . . to the public, directly or indirectly . . . ." MBCI argues that the plant or equipment must be owned, conducted, managed, operated or controlled while the plant or equipment is being used in the business of transmitting messages by telephone to the public, directly or indirectly. This intepretation appears correct to the Court, again because a contrary interpretation would require an unwarranted regulatory intrusion into markets not involving utilities and the need for special regulation because of their monopolistic characteristics.

The PSC claims authority from other statutes but, even if there were some other jurisdiction over MBCI under the statutes, jurisdiction under them would not give the PSC jurisdiction to regulate MBCI's issuance of securities. Moreover, those arguments depend upon this Court's willingness to disregard MBCI's separate corporate existence, which this Court has already determined it will not do.

The PSC's policy arguments in support of regulation of MBCI's issuance of securities are also without merit. The mere fact that the PSC can list reasons for its regulatory oversight of MBCI does not constitute a statutory basis upon which this Court can find jurisdiction for the PSC to engage in such regulatory oversight. Moreover, there is no reason to suppose that Michigan Bell is so unsophisticated or unwise that it needs protection as an investor, and there is no reason that Michigan Bell's ratepayers cannot be fully protected in Michigan Bell rate cases.

Were this Court to intepret § 301(1) so as to allow the PSC to regulate MBCI's issuance of securities to Michigan Bell, we believe the statute would be preempted by federal law. Under *United States v Western Electric,* 552 F Supp 131 (D DC, 1982), aff'd sub nom *Maryland v United States,* 460 US 1001; 103 S Ct 1240; 75 L Ed 2d 472 (1983), all of Michigan Bell's functions concerning provisions of CPE ceased January 1, 1984. Under the terms of the order resulting in the telephone company divesture, Michigan Bell was permitted to enter the CPE market only through a fully separated subsidiary with separate accounting provisions or a separate division. MBCI falls within the former category.

The federal rulings were followed by FCC Rule, 47 CFR § 64.702(d):

> A carrier subject to the proscription set forth in paragraph (c) of this section:
>
> \* \* \*
>
> (4) Must obtain Commission approval as to the manner in which the separate corporation is to be capitalized, prior to obtaining any interest in the separate corporation or transferring any assets, and must obtain Commission approval of any modification to a Commission approved capitalization plan.

"Federal regulations have no less preemptive effect than federal statutes." *Fidelity Federal Savings & Loan Ass'n v De la Cuesta,* 458 US 141, 153; 102 S Ct 3014; 73 L Ed 2d 664 (1982).

Applicable law in deciding whether federal law preempts state law was outlined in *Attorney General v Beta-X Corp,* 103 Mich App 51, 54; 302 NW2d 596 (1981), lv gtd 412 Mich 853 (1981), appeal dismissed with prejudice, 414 Mich 942 (1982):

Plaintiff notes that the Federal and state legislation embodies a similar legislative intent, in effect, the protection of innocent investors in the targeted corporation. *Piper v Chris-Craft Industries, Inc,* 430 US 1; 97 S Ct 926; 51 L Ed 2d 124 (1977), *Gerber Products Co v Anderson, Clayton & Co,* 76 Mich App 410; 256 NW2d 754 (1977). Due to the similar legislative intent so identified, plaintiff argues that greater investor protections of the state act are not preempted. However, merely finding similar state and Federal intent does not foreclose Federal preemption of otherwise conflicting state laws. *Indiana & Michigan Power Co v Public Service Comm,* 405 Mich 400, 415; 275 NW2d 450 (1979). Where state and Federal statutes have the same underlying purpose, the state law is preempted if the means chosen by the state to achieve the purpose interfere with the means chosen by Congress. In such a case, "the state policy may produce a result inconsistent with the objective of Federal statute". *Rice v Santa Fe Elevator Corp,* 331 US 218, 230; 67 S Ct 1146; 91 L Ed 1447 (1947), *Indiana & Michigan Power Co, supra.* See also *De Canas v Bica,* 424 US 351; 96 S Ct 933; 47 L Ed 2d 43 (1976).

The PSC's brief includes, as Appendix A, a copy of MBCI's interim capitalization plan submitted for approval to the FCC. If the state policy—approval of capitalization plan by approval of issuance of securities—may produce a result inconsistent with the objective of the federal statute (rule), the state statute is preempted. *Rice, supra.* Here, the state asserts its capacity to disallow securities issuance if there would be, in the PSC's judgment, either undercapitalization or overcapitalization. This obviously might conflict with the federal objective of allowing the FCC to make such determinations. Moreover, once the FCC approves a capitalization plan, any decision by the PSC other than simply rubber stamping the FCC would amount to a con-

flicting ruling. The PSC has provided authority for
the proposition that the FCC has expressed its will
that the states be allowed to regulate in some
areas. However, the undisputed exercise of the
FCC's authority in the area of approving MBCI's
capitalization plan requires this Court to hold
that, to the extent state law could be interpreted
to allow the PSC to regulate MBCI's issuance of
securities, the field has been preempted.

In light of our disposition of the previous issues,
we need not decide whether the PSC's reporting
requirements, imposed as a condition of securities
issuance approval, were improper. We would note,
however, that under MCL 460.301(3); MSA
22.101(3), the PSC may, in connection with its
approval of an issuance of securities, impose rea-
sonable terms and conditions. The very structure
of the statute suggests that the PSC's expertise
should be the basis for determining what condi-
tions may be attached, and the facts on the record
of financial and managerial interrelationship
would be sufficient to support the PSC's imposition
of such reporting conditions. Indeed, if the PSC
wished to impose similar conditions on Michigan
Bell, this Court can see no bar under the statute.

Michigan Bell raises another argument which
we need not decide. MCI Telecommunications Cor-
poration and GTE Sprint Communications Corpo-
ration applied to the PSC for approvals to do busi-
ness. In an order of April 23, 1985, the PSC found
that both entities were public utilities and were
subject to its regulatory jurisdiction. The PSC went
on, however, to exempt both of them from the
requirements of § 301(1). Michigan Bell argues
that it was arbitrary, capricious, inconsistent and
discriminatory not to similarly exempt MBCI. We
have not been provided with any record to allow
us to analyze the similarities and differences be-

tween the corporate structures, business operations and applicable federal regulations involving the two companies complained of as compared with MBCI. In addition, the PSC's opinion with respect to those two entities, a copy of which was appended to MBCI's supplemental brief, illustrates that the companies have a national operation. Under *Western Union Telegraph Co v Public Service Comm,* 127 Mich App 88; 338 NW2d 731 (1983), the PSC found that securities regulation might well be obviated because of the operation of the Commerce Clause, US Const, art I, § 8, cl 3. The decision has not been shown to be erroneous, nor has it been shown to be arbitrary, capricious, inconsistent or discriminatory when compared to the PSC's decision to regulate MBCI's issuance of securities.

For the reasons set forth in this opinion, the PSC's decision is reversed because the PSC does not have jurisdiction over MBCI's issuance of securities under Michigan law and because, in any event, the field has been preempted by federal law.

Reversed.