ATTORNEY GENERAL v BETA-X CORPORATION

Docket No. 46077. Submitted June 5, 1980, at Lansing.—Decided January 21, 1981.

The Attorney General brought an action against Beta-X Corporation and Francis G. Bridge, seeking an injunction prohibiting defendants from committing future violations of the Michigan take-over offers act and for a declaration that the provisions of the act do not infringe upon an area preempted by Federal legislation. Defendants moved for summary judgment, which motion was granted, the Ingham Circuit Court, Ray C. Hotchkiss, J., finding that the Michigan act conflicted with Federal legislation and, hence, was preempted. Plaintiff appealed and moved for immediate consideration by the Court of Appeals to consider the validity of the Michigan statute under the Federal preemption doctrine. *Held:*

1. The conflicting provisions of the Michigan take-over offers act as applied to corporations governed by the Federal law under the Williams act are void under the Federal preemption doctrine but remain valid as to those corporations not included in the Federal regulatory scheme.

2. The anti-fraud provisions of the take-over offers act do not impose requirements different from those of their Federal counterpart, remaining valid and enforceable despite similarities to the Federal statute.

Affirmed in part, reversed in part.

1. SECURITIES REGULATION — FEDERAL PREEMPTION — MEANS OF REGULATION — COMMERCE.

Federal preemption of otherwise conflicting state laws regulating stock transactions and offers is not foreclosed merely upon finding similar state and Federal intent; where state and Federal statutes have the same underlying purpose, state law is preempted if the means chosen by the state to achieve its purpose interfere with the means chosen by Congress.

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 69 Am Jur 2d, Securities Regulation — State § 2.
69 Am Jur 2d, Securities Regulation — Federal § 14.
[3, 4] 69 Am Jur 2d, Securities Regulation — State § 11.

2. SECURITIES REGULATION — PARALLEL FEDERAL AND STATE REGULA-
TIONS — FEDERAL PREEMPTION.

Enforcement of provisions of Michigan statutes regulating securi-
ties transactions which do not directly conflict with Federal
regulations will be preempted by Federal regulations only
where enforcement of state provisions would impair Federal
superintendence of the field or where Congress has expressed
its intent to displace parallel state regulations.

3. SECURITIES REGULATION — TAKE-OVER OFFERS ACT — WILLIAMS
ACT — FEDERAL PREEMPTION.

Provisions of the Michigan take-over offers act which conflict with
Federal regulations where applied to corporations governed by
the Federal law under the Williams act are void under the
Federal preemption doctrine but remain valid as to those
corporations not included in the Federal regulatory scheme (15
USC 78l[g][1], 78m[d], [e], 78n[d]-[f]; MCL 451.901 *et seq.;* MSA
21.293[1] *et seq.).*

4. SECURITIES REGULATION — TAKE-OVER OFFERS ACT — ANTI-FRAUD
PROVISIONS — FEDERAL PREEMPTION — STATUTES.

The anti-fraud provisions of the take-over offers act do not impose
requirements different from their Federal counterparts and,
thus, remain valid and enforceable despite similar require-
ments (15 USC 78n[e], MCL 451.910; MSA 21.293[10]).

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Marc A. Gold-
man,* Assistant Attorney General, for plaintiff.

*Christy, Rogers & Gantz,* for defendant.

Before: DANHOF, C.J., and M. J. KELLY and G. R.
CORSIGLIA,* JJ.

M. J. KELLY, J. Plaintiff brings this action seek-
ing an injunction prohibiting the defendants from
future violations of the Michigan take-over offers
act, MCL 451.901 *et seq.;* MSA 21.293(1) *et seq.,* in
connection with defendants' attempted purchase of
the common capital stock of the Dearborn Bank

* Circuit judge, sitting on the Court of Appeals by assignment.

and Trust Company. Plaintiff also seeks a declaration that the provisions of the Michigan act do not infringe upon an area preempted by Federal legislation, sepcifically the Williams act, 15 USC 78m(d), (e), 78n(d)-(f).

On April 30, 1979, defendants published in Detroit area newspapers a notice of offer to purchase for cash 69,000 shares of common capital stock of the Dearborn Bank and Trust Company at $18 per share. Upon request, defendants furnished shareholders of the bank copies of the offer to purchase in a related letter of transmittal. The offer was to expire on May 25, 1979, at 5 p.m. The Attorney General then instituted this action under MCL 451.914(2); MSA 21.293(14)(2) to enjoin the attempted acquisition. Plaintiff's complaint alleged that defendants failed to file a registration statement pursuant to MCL 451.905(3)(a); MSA 21.293(5)(3)(a) and that defendants' offer did not remain open for the minimum 60-day period established in MCL 451.905(1), (2); MSA 21.293(5)(1), (2). Plaintiff also alleged that defendants had made misrepresentations or omissions of material facts, contrary to MCL 451.910(2); MSA 21.293(10)(2), by failing to state that a previous offer by William C. Roney and Company to purchase at $20 per share was refused by the bank's stockholders and that defendants neglected to identify a February 23, 1979, offer to purchase, for $22 per share, those Dearborn Bank and Trust shares held by the Bank of the Commonwealth, which offer was subsequently refused.

On May 25, 1979, the trial court granted a temporary restraining order against purchase of Dearborn stock by defendants. In an opinion issued July 11, 1979, the lower court dissolved its temporary order and granted a motion for sum-

mary judgment in favor of defendants under GCR 1963, 117. In its opinion, the lower court found the above Michigan statutory provisions in conflict with, and hence preempted by, contrary provisions of the Williams act. We granted the plaintiff's subsequent motion for immediate consideration to consider the validity of the Michigan statute under the Federal preemption doctrine.

Plaintiff notes that the Federal and state legislation embodies a similar legislative intent, in effect, the protection of innocent investors in the targeted corporation. *Piper v Chris-Craft Industries, Inc,* 430 US 1; 97 S Ct 926; 51 L Ed 2d 124 (1977), *Gerber Products Co v Anderson, Clayton & Co,* 76 Mich App 410; 256 NW2d 754 (1977). Due to the similar legislative intent so identified, plaintiff argues that greater investor protections of the state act are not preempted. However, merely finding similar state and Federal intent does not foreclose Federal preemption of otherwise conflicting state laws. *Indiana & Michigan Power Co v Public Service Comm,* 405 Mich 400, 415; 275 NW2d 450 (1979). Where state and Federal statutes have the same underlying purpose, the state law is preempted if the means chosen by the state to achieve the purpose interfere with the means chosen by Congress. In such a case, "the state policy may produce a result inconsistent with the objective of the Federal statute". *Rice v Sante Fe Elevator Corp,* 331 US 218, 230; 67 S Ct 1146; 91 L Ed 1447 (1947), *Indiana & Michigan Power Co, supra.* See also *De Canas v Bica,* 424 US 351; 96 S Ct 933; 47 L Ed 2d 43 (1976).

In *Great Western United Corp v Kidwell,* 577 F2d 1256, 1276-1277 (CA 5, 1978), *rev'd on other grounds sub nom Leroy v Great Western United Corp,* 443 US 173; 99 S Ct 2710; 61 L Ed 2d 464

(1979), the Court analyzed the Idaho take-over act under a claim of Federal preemption:

"The underlying purpose of the Williams Act is to protect investors. *Piper v Chris-Craft Industries, Inc,* 1977, 430 US 1, 97 S Ct 926, 51 L Ed 2d 124. Congress chose this goal in the Williams Act and adopted a distinct means of achieving it. Essentially, Congress relied upon a 'market approach' to investor protection. The function of federal regulation is to get information to the investor by allowing both the offeror and the incumbent managers of a target company to present fully their arguments and then to let the investor decide for himself. In identical language the Senate and House Reports explained, 'This bill is designed to make the relevant facts known so that shareholders have a fair opportunity to make their decision.' In *Rondeau v Mosinee Paper Corp,* 1975, 422 US 49, 58, 95 S Ct 2069, 45 L Ed 2d 12, the Supreme Court noted that Congress wanted to give each side an opportunity to express and explain its position without giving target management a weapon against take-over bids. See also, *Humana, Inc v American Medicorp, Inc,* SDNY 1978, 445 F Supp 613.

"The reason for this approach was congressional recognition that tender offers often benefit an investor and that a statute preventing tender offers could harm, rather than protect, investors. *E.g.,* S Rep No. 550, 90th Cong, 1st Sess at 3 (1967) (Senate Report); HR Rep No. 1711, 90th Cong, 2d Sess at 3 (1968) (House Report); US Code Cong & Admin News 1968, p 2811." (Footnotes omitted.)

In part due to the Idaho provision permitting advance notice to a targeted company, the Court held:

"Idaho's statute is preempted, because the market approach to investor protection adopted by Congress and the fiduciary approach adopted by Idaho are incompatible. The Senator for whom the Williams Act is named has written, '[a]dvance notice provisions, and requirements concerning the duration of offers, the pro

rata purchases of shares, and the withdrawal rights of share holders either explicitly conflict with federal provisions on the same subjects or are obstacles to the accomplishment of objectives implicit in the federal statutes'. H. Williams, *Introduction to Developments in Tender Offers for Corporate Control* xix (1977)." *Id.,* 1279.

Subsequently, courts have split on the preemption question. In *Dart Industries v Conrad,* 462 F Supp 1 (SD Ind, 1978), the district court found the Delaware statute preempted. See also *Unitrod Corp v Dynamics Corp of America,* 399 NE2d 5 (Mass, 1980), in which the Court found the Massachusetts statute's departure from neutrality, said to be indicative of an "anti-takeover philosophy" in state legislation, constituted a principal ground for finding preemption. But see *Telvest, Inc v Bradshaw,* 618 F2d 1029 (CA 4, 1980), in which the Court found no specific conflict between the Federal and Virginia laws and reversed the district court's injunction restraining enforcement of the state provision. And in *AMCA International Corp v Krouse,* 482 F Supp 929 (SD Ohio, 1979), the district court upheld the Ohio statute although its disclosure and pre-offer hearing requirements are not found in the Federal act.

Tender offers under the Michigan statute do not become effective until ten days after the offeror files a registration statement with the administrator and with the target company and publicly discloses the general terms of the offer, MCL 451.905(3); MSA 21.293(5)(3), in contrast to the more limited Federal Williams act requirement of pre-offer registration with the SEC. 15 USC 78n(d). In Michigan, the administrator can stay the effective date of the offer for a hearing on alleged violations of the act. MCL 451.905(4); MSA

21.293(5)(4), MCL 451.907; MSA 21.293(7). No such power has been given to the SEC.

The difference between the Michigan and Federal provisions discussed above is Michigan's delay of tender offer. During the waiting period provided in our statute, a target company could institute measures designed to defeat the proposed acquisition, including the abolition of cumulative voting, arranging alternative sales of defensive mergers, or providing extended employment contracts to incumbent management. In this respect, the state-mandated delay operates to increase the incumbent management's chances for a successful defense and, thus, to upset the careful balance struck by the drafters of the Federal statute.

We note, however, that the state and Federal statutes are not entirely coextensive. While the Williams act applies only to those corporations having a minimum of $1,000,000 in assets and 500 shareholders, 15 USC 78l(g)(1), 15 USC 78m(d)(1), the Michigan take-over act extends its provisions to all such enterprises with over 100 shareholders. MCL 451.904(2)(b); MSA 21.293(4)(2)(b). Thus, as to corporations not affected by both statutory schemes, our inquiry to determine Federal preemption is different. Where the two laws do not directly conflict, Federal preemption applies only if enforcement of the state provision would impair Federal superintendence of the field or Congress has expressed its intent to displace parallel state regulations. *Florida Lime & Avocado Growers, Inc v Paul,* 373 US 132; 83 S Ct 1210; 10 L Ed 2d 248 (1963). Our review of pertinent Federal decisions has disclosed no such intent from the present Securities and Exchange Act. See *Merrill, Lynch, Pierce, Fenner & Smith, Inc v Ware,* 414 US 117, 137; 94 S Ct 383; 38 L Ed 2d 348 (1973) ("Congress,

in the securities field, has not adopted a regulation system wholly apart from and exclusive of state regulation"), and *Securities and Exchange Comm v National Securities, Inc,* 393 US 453, 461; 89 S Ct 564; 21 L Ed 2d 668 (1969) ("[U]nder the securities laws state regulation may co-exist *[sic]* with that offered under the federal securities laws"). Therefore, we conclude, the conflicting provisions of the Michigan statute as applied to corporations governed by the Williams act are void under the Federal preemption doctrine. The state provisions remain valid, however, as to those corporations not included in the Federal regulatory scheme.

Plaintiff next argues that the anti-fraud provisions of the Michigan act are valid even if the remaining sections are preempted. MCL 451.910; MSA 21.293(10) provides:

"(1) Copies of advertisements, circulars, letters, or other materials published by the offeror or the target company, soliciting or recommending the acceptance or rejection of the take-over offer, shall be filed with the administrator and delivered to the target company or offeror, respectively, not later than the time copies of the solicitation materials are first published or used or sent to security holders of the target company. The administrator may require publication and distribution of corrective material in a manner reasonably designed to reach the previous recipients of the material if the material violates subsection (2).

"(2) A person shall not make an untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in the light of the circumstances under which they are made, not misleading, or engage in a fraudulent, deceptive, or manipulative act or practice in connection with a tender offer or request or invitation for tenders, or a solicitation of security holders in opposition to or in favor of an offer, request, or invitation.

"(3) The administrator may by rule define and prescribe means reasonably designed to prevent those acts and practices which are fraudulent, deceptive, or ma-

nipulative. The administrator may by rule or order prohibit the use of solicitation materials deemed false or misleading."

Consistent with this statute is 15 USC 78n(e), which provides:

"It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative."

Comparison of the statutes reveals that the state provisions do not impose requirements different from those of their Federal counterpart. Where the state provisions do not interfere with Federal objectives, the preemption doctrine will not abrogate state legislative efforts. Therefore, the anti-fraud provisions of the Michigan act remain valid and enforceable despite the similar requirements of the Federal statute.

We hold that Michigan's registration requirements are invalid as federally preempted because they may produce a result inconsistent with the objective of the Federal statute. No such consideration suggests that Michigan's anti-fraud provisions are preempted. The trial court's decision is therefore modified insofar as it can be held to hold the anti-fraud provisions preempted.

Affirmed in part, reversed in part. No costs, neither party having prevailed in full.