EMPIRE, INCORPORATED, Plaintiff,

v.

John ASHCROFT, Attorney General of the State of Missouri, Joseph W. Schoeberl, Commissioner of Securities of the State of Missouri; and Wetterau, Incorporated, Defendants.

No. 81–4174–CV–C–W.

United States District Court,
W. D. Missouri, C. D.

Sept. 3, 1981.

Steven G. Emerson, Morris, Larson, King, Stamper & Bold, Kansas City, Mo., James Robertson, Wilmer, Cutler & Pickering, Washington, D. C., for plaintiff.

Thomas C. Walsh, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for Wetterau.

Bobby J. Jones, Asst. Atty. Gen., Jefferson City, Mo., for Ashcroft & Schoeberl.

## MEMORANDUM AND ORDER

SCOTT O. WRIGHT, District Judge.

Plaintiff Empire, Incorporated ("Empire") filed this action seeking a temporary restraining order and a preliminary injunction enjoining the defendants from attempting to invoke or enforce the Missouri Takeover Bid Disclosure Act (Takeover Act), Chapter 409, Sections 409.500 through 409.565, RSMo 1978, in connection with Empire's tender offer for certain shares of common stock of Wetterau, Incorporated

("Wetterau"), and restraining defendants from commencing or maintaining, in any other court, litigation bearing on the tender offer or the validity of the Takeover Act as applied to the tender offer. On August 21, 1981, this Court entered the requested temporary restraining order. A hearing on plaintiff's motion for a preliminary injunction was held on August 26, 1981. After considering the arguments, affidavits, and briefs submitted by counsel, the Court concludes that the requested preliminary injunction should be issued.

## Statement of the Case

On August 19, 1981, Empire announced its intention to make a cash tender offer for up to 1,200,000 shares of the common stock of Wetterau at a price of $21 per share. Empire's tender offer is addressed to all of Wetterau's approximately 7,200 shareholders of record throughout the United States.

As a result of publicly announcing its offer, Empire is required under federal law to commence or withdraw the tender offer within five business days of the announcement—no later than August 25. SEC Rule 14d–2(b), 17 C.F.R. § 240.14d–2(b). Under the Missouri Takeover Bid Disclosure Act, Sections 409.500 through 409.565, RSMo 1978, Empire is prohibited from commencing its offer until at least twenty days after filing a disclosure statement with the Commissioner of Securities and registered agent of the target company. Section 409.515, RSMo 1978. There may also be further delay under the Missouri Act because within fifteen days after the filing, the Commissioner may order a hearing which may last for an indeterminate length of time. Section 409.515, RSMo 1978. Thus, Empire filed this action claiming that once it announced its tender offer, it was impossible to comply with both federal and state law.

On August 20, 1981, Wetterau filed suit against Empire in state court, seeking to enjoin Empire from going forward with its tender offer until it complied with the provisions of the Missouri Takeover Act. On August 21, 1981, this Court restrained Wetterau from proceeding with the state court action, and this hearing on the preliminary injunction followed.

Empire argues that the Takeover Act is preempted under the supremacy clause, Article VI, Clause 2 of the United States Constitution, because it is in direct conflict with federal law, specifically, Sections 13(d) and 13(e) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78m(d)–(e) and 78n(d)–(f) (the "Williams Act") and the regulations thereunder, 17 C.F.R. § 240.14d–1 et seq. Plaintiff also argues that the Takeover Act imposes an unconstitutional burden on interstate commerce and is, therefore, invalid under the commerce clause, Article I, Section 8, Clause 3 of the United States Constitution. The defendants contend, first, that the principles of federalism require this Court to abstain from reaching the constitutional issues raised by Empire because they can and should be heard in the pending state action. Second, in the event that this Court refuses to apply the abstention doctrine, defendants argue that the Takeover Act is not in conflict with any federal law, nor is it an unconstitutional burden on interstate commerce. An amicus curiae brief was filed on behalf of the Securities and Exchange Commission (SEC). The SEC takes the position that the Missouri Takeover Act is unconstitutional because it frustrates the purposes of the Williams Act.

## Abstention Doctrine

This action was filed in the United States District Court for the Western District of Missouri on August 19, 1981. One day later, on August 20, 1981, the defendant Wetterau instituted suit against Empire in the Circuit Court of St. Louis County, requesting that court to enjoin Empire from going forward with its tender offer until it complied with the provisions of the Missouri Takeover Act. The defendants argue that the constitutional questions raised by Empire's motion can be fully and competently adjudicated by the Missouri court in the pending state action, and this Court is stripped of its jurisdiction under the principles of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The doc-

trine enunciated in *Younger v. Harris* and its progeny[1] requires a federal court to abstain from deciding federal constitutional challenges to state statutes when there is a pending parallel state proceeding and the same issues can be decided by the state court.

The *Younger* case and the subsequent cases following *Younger*, are inapposite to the case before this Court. The *Younger* doctrine, "is not jurisdictional in nature, but is an equitable doctrine based upon comity." *Hunt v. Roth*, 648 F.2d 1148, 1154 (8th Cir. 1981). The doctrine is essentially one of equitable restraint, where a federal court defers judgment to a state court because of the overriding state policies involved. The *Younger* concept is a system in which there is a balancing of state and federal interests, *Younger v. Harris, supra*, 401 U.S. at 44, 91 S.Ct. at 750–51; *see also, Trainor v. Hernandez*, 431 U.S. 434, 448–50, 97 S.Ct. 1911, 1920–21, 52 L.Ed.2d 486 (1977) (concurring, Blackmun, J.) and where the federal interests clearly outweigh the state interests, application of the *Younger* doctrine is inappropriate.

■ Unlike *Younger* and its progeny, this case involves a conflict between state and federal law, and the question presented is whether the federal law has preempted the state law. A preemption case is resolved on an analysis of the policies of federal law, and the Court must determine whether the state's "law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525–26, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977), quoting from *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). A supremacy clause claim is "essentially one of federal policy," and the Supreme Court has recognized that "the federal courts are particularly appropriate bodies for the application of pre-emption principles." *Hagans v. Lavine*, 415 U.S. 528, 550, 94 S.Ct. 1372, 1385–86, 39 L.Ed.2d

577 (1974); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 729, 86 S.Ct. 1130, 1140, 16 L.Ed.2d 218 (1966). The strong federal interest in this case outweighs the state interest, and the federal court is an appropriate forum for Empire's claims.

The defendants also argue that this Court should abstain from deciding the merits of this case on the basis of the *Pullman* doctrine, set forth in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The *Pullman* doctrine dictates abstention by federal courts whenever it is necessary to interpret ambiguous or unsettled state law and such a decision would obviate the need to reach a federal constitutional question. Under these circumstances, state courts should have the opportunity to construe their own laws. The pending case does not involve an ambiguous or unsettled question of state law, and for the same reasons that *Younger v. Harris* does not apply to this case, neither does *Pullman*. *See Kennecott Corp. v. Smith*, 637 F.2d 181, 184–85 (3d Cir. 1980).

■ Finally, the defendants argue that the relief sought by plaintiff is barred by the Anti-Injunction Statute, 28 U.S.C. § 2283. This Act generally prohibits a federal court from staying proceedings in a state court. The Act does not prevent issuance of such equitable relief where "expressly authorized by Act of Congress." The Supreme Court, in *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), has squarely held that claims brought under 42 U.S.C. § 1983 fall within the statutory exception. Empire has asserted its constitutional claims under Section 1983, and the Anti-Injunction Statute does not bar this court's issuance of the requested injunctive relief.

*Preliminary Injunction*

■ Plaintiff has moved for a preliminary injunction enjoining defendants from invoking or enforcing the provisions of the

---

1. *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

Takeover Act and enjoining them from commencing or maintaining, in any other court, litigation bearing on the tender offer or the validity of the Takeover Act as applied to the tender offer. The grant or denial of preliminary injunctive relief in the Eighth Circuit involves an evaluation of four factors:

(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). After evaluating each of these factors, the Court finds that Empire is entitled to the injunctive relief it seeks.

### A. *The Threat of Irreparable Harm to Empire.*

Compliance with the Missouri Takeover Act will result in a delay not contemplated by the Williams Act. In fact, a lengthy waiting period undermines "the basic purpose of the Williams Act—to maintain a neutral policy toward cash tender offers, by avoiding lengthy delay that might discourage their chances for success." H.R.Rep. No.94–1373, 94th Cong., 2d Sess. 12 (1976); U.S.Code Cong. & Admin.News 1976, pp. 2572, 2644, quoted from *Great Western United Corp. v. Kidwell*, 577 F.2d 1256, 1278 (5th Cir. 1978), *rev'd on venue grounds sub nom., Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). It is generally agreed that time is of the essence for a successful tender offer. Delay affords the incumbent management an opportunity to resort to defensive maneuvers designed to thwart the tender offer, thereby substantially decreasing the likelihood of its success. *MITE Corp. v. Dixon*, 633 F.2d 486, 497 (7th Cir. 1980), *juris noted sub nom., Edgar v. MITE Corp.*, —— U.S. ——, 101 S.Ct. 2043, 68 L.Ed.2d 347 (1981). The Takeover Act's waiting periods substantially increase the likelihood that Empire's tender offer may not succeed,

and Empire would suffer a substantial and irretrievable financial loss in terms of resources expended in anticipation of the offer and the loss of a desired business opportunity. Empire would be irreparably harmed absent the issuance of the requested injunctive relief.

### B. *Harm to Other Parties Litigant*

None of the named defendants can assert a claim of irreparable injury if enforcement of the Takeover Act is enjoined. The Commissioner of Securities and the Attorney General do not have any interest that will suffer as a result of the injunctive relief. The defendant Wetterau is still afforded the protection of the Williams Act. Wetterau's only possible injury would be a deprivation of the protection available to incumbent management under the Takeover Act. This "protection" is in direct conflict with the purposes and policies of the Williams Act and underscores the need for injunctive relief. *See Kennecott Corp. v. Smith*, 637 F.2d 181, 190–91 (3d Cir. 1980).

### C. *The Probability that Empire Will Succeed on the Merits*

The probability that Empire will succeed on the merits is overwhelming. Within recent years, many similar state takeover statutes have been declared invalid on preemption and commerce clause grounds. *See Kennecott Corp. v. Smith*, 637 F.2d 181 (3d Cir. 1980) (New Jersey statute): *MITE Corp. v. Dixon*, 633 F.2d 486 (7th Cir. 1980), *juris noted sub nom. Edgar v. MITE Corp.*, —— U.S. ——, 101 S.Ct. 2043, 68 L.Ed.2d 347 (1981) (Illinois statute); *Great Western United Corp. v. Kidwell*, 577 F.2d 1256 (5th Cir. 1978), *rev'd on venue grounds sub nom. Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) (Idaho statute); *Crane Co. v. Lam*, 509 F.Supp. 782 (E.D.Pa.1981) (Pennsylvania statute); *Kennecott Corp. v. Smith*, 507 F.Supp. 1206 (D.N.J.1981) (New Jersey statute); *Canadian Pacific Enterprises (U.S.), Inc. v. Krouse*, 506 F.Supp. 1192 (S.D.Ohio 1981) (Ohio statute); *Hi-Shear Industries, Inc. v. Campbell*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 97,804 (D.S.C.1980) (South Carolina

statute); *Hi-Shear Industries, Inc. v. Neiditz*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 97,805 (D.Conn.1980) (Connecticut statute); *Dart Industries, Inc. v. Conrad*, 462 F.Supp. 1 (S.D.Ind.1978) (Delaware statute); *Kelly ex rel. McLaughlin v. Beta-X Corp.*, 103 Mich. App. 51, 302 N.W.2d 596, [Current] Fed.Sec. L.Rep. (CCH) ¶ 97,897 (Mich.Ct.App.1981) (Michigan statute); *Eure v. Grand Metropolitan, Ltd.* [1980] Fed.Sec.L.Rep. (CCH) ¶ 97,694 (N.C.Super.Ct.1980) (North Carolina statute). An analysis of the Missouri Takeover Act and its application, shows that it too is invalid on the same grounds.

### (i) *Preemption*

■ The Supreme Court has set forth two tests in determining whether a state statute is void under the supremacy clause, *Jones v. Rath Packing Co.*, 430 U.S. 519, 525–26, 97 S.Ct. 1305, 1309–10, 51 L.Ed.2d 604 (1977). The first inquiry is whether congressional enactments have excluded all state legislation in the same field. If not, the second inquiry is whether the state law is so inconsistent with federal law that it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Jones v. Rath Packing Co., supra*, 430 U.S. at 526, 97 S.Ct. at 1310, quoting from *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 339, 404, 85 L.Ed. 581 (1941).

■ Nothing in the Securities Exchange Act of 1934 explicitly preempts all state takeover legislation. If the Missouri Takeover Act is preempted by federal law, it must be so inconsistent with federal law that, in the words of *Hines*, it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." After an analysis of the Missouri Takeover Act's application and the purposes of the Williams Act, this Court finds that this test is met, and certain provisions of the Takeover Act are invalid under the supremacy clause.

The basic issue here is whether the pre-commencement filing requirements of the Missouri Takeover Act conflict with the objectives of the Williams Act. The Takeover Act provides that a tender offer may not be made until twenty days after the offeror has filed a disclosure statement with the Commissioner of Securities and the registered agent of the target company. This pre-commencement filing required by the Takeover Act must include certain information relating to the proposed tender offer. Empire argues that such information constitutes a public announcement of a tender offer for purposes of SEC Rule 14d–2(b), and Empire is required by federal law to commence its offer within five business days, making it impossible to comply with Missouri's twenty-day waiting period. The defendants disagree with plaintiff's analysis and argue that Rule 14d–2(b) is compatible with the Takeover Act because the pre-commencement filing is confidential and does not constitute a public announcement. Therefore, the defendants suggest that it would be possible for a bidder to make a confidential pre-commencement filing under the Missouri Act and not publicly announce the offer until the 15th day. At that point, he could comply with both the state and federal law.

After reviewing the legislative history, this Court must soundly reject this theory. In considering various bills, both before and after enacting the Williams Act, Congress focused on the issue of pre-commencement filings. Congress has debated and has repeatedly rejected proposals to require either public or confidential pre-commencement disclosures by tender offerors, concluding that such disclosures would harm investors and injure the trading market.[2]

---

**2.** In 1965, Congress rejected a proposed twenty-day pre-commencement filing requirement. *See* 111 Cong.Rec. 28257–28259 (1965). In 1967 Congress rejected a five-day confidential pre-commencement filing requirement. S.Rep. No.550, 90th Cong., 1st Sess. 4 (1967) U.S.Code Cong. & Admin.News 1968, p. 2811; *Hearings*

*on S. 510 Before the Subcomm. on Securities of the Senate Comm. on Banking and Currency*, 90th Cong. 1st Sess. 72–75, 87–89, 98, 105, 139–40, 151, 163, 245 (1967); *Hearings on H.R. 14475 and S. 510 Before the Subcomm. on Commerce and Finance of the House Comm. on*

The purpose of the Williams Act is shareholder protection. In order to accomplish this goal, Congress attempted to strike an equal balance between incumbent management and the offeror. The Williams Act is designed "to require full and fair disclosure for the benefit of investors while at the same time providing the offeror and management equal opportunity to fairly present their case." S.Rep.No.550, 90th Cong., 1st Sess. 3 (1967); H.R.Rep.No.1711, 90th Cong., 2d Sess. 4 (1968), U.S.Code Cong. & Admin.News 1968, pp. 2811, 2813. This "policy of neutrality" is undermined when extended delay is injected into the tender offer process. Delay can prevent the offeror from fairly presenting its case. *Great Western United Corp. v. Kidwell, supra,* 577 F.2d at 1277. Delay also tips the regulatory balance in favor of incumbent management by affording them the opportunity to employ defensive tactics, such as arranging a defensive merger, exhorting shareholders not to tender their shares, increasing dividends, or abolishing cumulative voting, in order to thwart a successful tender offer. *MITE Corp. v. Dixon, supra,* 633 F.2d, at 497, n. 24. The confusion which results from this type of activity in the marketplace is viewed as harmful to shareholders because it effectively deprives them of the choice that a cash tender offer gives to them. *Great Western United Corp. v. Kidwell, supra,* 577 F.2d, at 1278. The Missouri Takeover Act provides for an initial twenty-day period of delay. Further delay is possible if the Commissioner chooses to convene a hearing which may last for an indeterminate length of time. The effects of

the Missouri statute is to prevent prompt disclosure of crucial information to shareholders and to shift the advantage in a takeover struggle to incumbent management. Both of these effects are contrary to the purposes of the federal law, and, therefore, the pre-commencement filing requirements and the hearing provisions of the Missouri Takeover Act are invalid under the supremacy clause of the United States Constitution.

### (ii) *Interstate Commerce Clause*

■ Plaintiff argues that the Missouri Takeover Act is also unconstitutional under the commerce clause because it imposes excessive burdens on interstate commerce. The impact of the Takeover Act is undeniably extraterritorial. By its terms, the Act applies to all nonexempt offers for shares which will result in the offeror owning more than 10% of the shares of any company organized under Missouri law, with its principal executive offices in Missouri, or a principal place of business in Missouri, without regard to the residence of the shareholders the Act purports to protect. Section 409.505, RSMo 1978. The potential for disruption of the national securities market is inherent in such extraterritorial application. The United States Court of Appeals for the Seventh Circuit directly addressed this issue in *MITE Corp. v. Dixon, supra,* 633 F.2d, at 502, stating in reference to the Illinois takeover act:

> The Act's most obvious burdens result from its global impact. Once the Act has

---

*Interstate and Foreign Commerce,* 90th Cong. 2d Sess. 44–46, 50–54 (1968).

During deliberations on the Williams Act amendments in 1970, the House subcommittee again considered and rejected suggestions that there be pre-commencement filings for cash tender offers. *See Hearings on H.R. 4285, S. 3431 and S. 336 Before the Subcomm. on Commerce and Finance of the House Comm. on Interstate and Foreign Commerce,* 91st Cong., 2d Sess. 6–7 (1970). The bill was not reported out of the subcommittee. S.Rep. 91–1125, 91st Cong., 2d Sess. (1970).

Two bills introduced in the 94th Congress would have amended the tender offer provisions of the Williams Act to require a 60-day

pre-commencement filing with the Commission. S. 2522, 94th Cong., 1st Sess. § 3 (1975); H.R. 10650, 94th Cong., 1st Sess. § 1 (1975). A third bill would have required such a filing with the Commissioner and the subject company at least 21 days prior to commencement. H.R. 14317, 94th Cong., 2d Sess. § 5 (1976). None of these bills were reported out of committee. Responding to Senator Proxmire's request for comment on S. 2522, the Commission opposed the bill because, among other things, it would hurt investors by increasing speculative risk and disrupting the markets during the waiting period. Letter to Senator Proxmire from Chairman Roderick Hills, April 19, 1976, BNA Sec.Reg. and L.Rep.No.351, A–3 (1976).

been invoked, all purchases, or offers to purchase by the offeror, of the target company's stock pursuant to a tender offer may be halted, including transactions. to be executed entirely outside the boundaries of Illinois. The Illinois Act thus possesses a significant potential to cause commercial disruption. For example, had the Secretary of State not been enjoined from going forward in the instant case, over 23 million dollars of interstate commerce would presumably have been affected. Illinois law would have determined when, if ever, purchases of, or offers to purchase, securities would be permitted under a tender offer. Moreover, the disruptive effects of the Illinois Act could be duplicated by other states seeking simultaneously to assert jurisdiction over a tender offer.... Where a number of states on various bases claim authority over a tender offer, any single state would have effective veto power over the offer even if it received the enthusiastic endorsement of all the other states.

The commerce clause "limits the power of the States to erect barriers against interstate trade." *Lewis v. BT Investment Managers, Inc.* 447 U.S. 27, 35, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980). The Missouri Takeover Act erects the same barriers against interstate trade that the Seventh Circuit discussed in *MITE.* In Missouri, the Commissioner of Securities can hold a hearing to determine whether the offeror proposes to make fair, full and effective disclosure to offerees. Section 409.515, RSMo 1978. If the Commissioner determines this requirement is not met, he can prevent the takeover bid. The potential that several states could assert jurisdiction over a tender offer, each with different pre-commencement filing requirements and the ability to stop the takeover bid, underscores the need for uniformity in this area. Non-residents should not be denied the opportunity to sell their shares pursuant to a tender offer made in full compliance with federal law. For these reasons, the pre-commencement filing requirements and the hearing provisions of the Missouri Takeover Act are also invalid under the commerce clause.

#### (iii) *Severability*

The defendants have requested the Court to invoke the doctrine of severability in the event that the Court sustains the challenge to the constitutionality of the pre-commencement filing requirements and the hearing provisions of the Missouri Takeover Act. Under the doctrine of severability, the Court would only reject the portions of the Act held to be unconstitutional, allowing the rest to stand. Essentially, all that is left of the Takeover Act are the anti-fraud provisions. This Court finds that the anti-fraud provisions and the portions declared unconstitutional are not so intimately connected with and dependent upon each other as to make the statute one composite whole. Therefore, under the doctrine of severability, only the unconstitutional parts are rejected, and the anti-fraud provisions may stand. *See Kennecott Corporation v. Smith*, 507 F.Supp. 1206, 1224–25 (D.N.J. 1981).

#### D. *Public Interest*

The last element to be considered in determining whether a preliminary injunction should issue is the public interest. In this case, the public interest strongly favors the issuance of injunctive relief. The most irreparable aspect of the injury caused by delay is done to the interests of the investing public. Delay lessens the possibility that the shareholders of Wetterau will ever again be in the position they have a right to be in by virtue of federal law. *Kennecott Corp. v. Smith, supra*, 637 F.2d, at 188. The shareholders are essentially deprived of a choice which Congress has determined is theirs to make. "Congress has declared what procedure is most salutory in tender offer situations," and the Courts "are obligated to observe the congressional policy choice." *Id.* at 190.

An analysis of the *Dataphase* elements mandate injunctive relief, and for the reasons stated, it is hereby

ORDERED that the pre-commencement filing requirements and the hearing provi-

sions of the Missouri Takeover Bid Disclosure Act, contained in Chapter 409, Sections 409.500 through 409.565, RSMo 1978, are preempted by the Williams Act amendments to the Securities Exchange Act of 1934, 15 U.S.C. §§ 78m(d)–(e) and 78n(d)–(f), as applied to the tender offer of Empire for any and all of the outstanding common stock of Wetterau. It is further

ORDERED that the pre-commencement filing requirements and the hearing provisions of the Missouri Takeover Act are unconstitutional and in violation of the supremacy clause of the United States Constitution, Article VI, Clause 2, and the commerce clause of the United States Constitution, Article I, Section 8, Clause 3, as applied to the tender offer of Empire for any and all of the outstanding common stock of Wetterau. It is further

ORDERED that Empire may continue and proceed with their tender offer for any and all of the outstanding common stock of Wetterau, without compliance with the Missouri Takeover Act. It is further

ORDERED that pursuant to the provisions of Rule 65 of the Federal Rules of Civil Procedure, the defendants Joseph W. Schoeberl, John D. Ashcroft, and Wetterau Corporation, their officers, successors in office, agents, directors, and shareholders, and all persons in concert or participation with them or any of them are enjoined from enforcing or invoking the precommencement filing requirements and the hearing provisions of the Missouri Takeover Act in connection with Empire's cash tender offer for any or all of the outstanding common stock of Wetterau, pending the hearing and determination of Empire's motion for a permanent injunction.

It is further

ORDERED that the defendants, their officers and successors in office, agents, directors, and shareholders, and all persons in concert or participation with them or any of them are enjoined from commencing or maintaining, in any other court, litigation bearing on the tender offer or the validity of the Takeover Act as applied to the tender offer, pending a hearing and determination of Empire's motion for a permanent injunction.