NATIONAL CITY LINES, INC.,
Plaintiff,

v.

LLC CORPORATION, a Delaware Corporation, Joseph Schoeberl, in his capacity as Commissioner of the Securities Division of the State of Missouri, and Donald Ainsworth, in his capacity as Director of the Division of Insurance of the State of Missouri, Defendants.

No. 81–4183–CV–C–W.

United States District Court,
W. D. Missouri, C. D.

Sept. 30, 1981.

Walter Theiss, St. Louis, Mo., for plaintiff.

Alex Bartlett, Jefferson City, Mo., for LLC Corp.

Robert Jones, Asst. Atty. Gen., Jefferson City, Mo., for Schoeberl and Ainsworth.

## ORDER AND MEMORANDUM

SCOTT O. WRIGHT, District Judge.

The plaintiff, National City Lines ("National"), challenges the constitutionality of certain provisions of the Missouri Takeover Bid Disclosure Act ("Takeover Act") and the Missouri Insurance Holding Companies Act ("Insurance Act"). National has moved for a temporary restraining order and a preliminary injunction enjoining the defendants from invoking or enforcing certain provisions of the Takeover and Insurance Acts. On September 11, 1981, this Court entered the requested temporary restraining order. A hearing on the plaintiff's motion for a preliminary injunction took place on September 29, 1981. After careful consideration of the arguments, affidavits and briefs submitted by the respective counsel, the Court concludes that a preliminary injunction must issue.

### I.

LLC Corporation ("LLC") is engaged, through subsidiaries, in the consumer finance, convenience food and insurance businesses. A subsidiary of LLC, Liberty Loan Corporation of Michigan, owns a credit life insurance company which is organized and operated under the insurance laws of Missouri. About ten percent of LLC's consolidated operating revenues are derived from the insurance business. National is engaged, through subsidiaries, in trucking, truck terminal leasing, and energy and real estate development. Defendant Schoeberl is the Commissioner of the Securities Division of Missouri, and has the statutory responsibility for administering and enforcing the Takeover Act. Defendant Ainsworth is the Director of the Missouri Division of Insurance, and has the statutory responsibility for administering and enforcing the Insurance Act.

On September 8, 1981, National announced its intention to make a cash tender offer at $3.25 net per share for any and all shares of LLC common stock. Two days later, the General Counsel of the Division of Insurance advised National that Section 382.040 of the Insurance Act was applicable to National's tender offer for LLC shares and that the Division would enforce the Insurance Act as it applied to the offer. On September 11, 1981, the Honorable Byron Kinder of the Circuit Court of Cole County, Missouri, issued a temporary restraining order against the consummation of National's announced tender offer until National filed with the Director of Insurance the informational statement required by Sections 382.-040 and 382.050 of the Insurance Act, obtained a hearing before the Director of Insurance as required by Section 382.060 of the Act, and obtained the approval of the Director as required by Section 382.060 of the Act. Later that same day, in response to National's motion for a temporary restraining order, this Court enjoined the Director of Insurance from enforcing those provisions of the Insurance Act challenged by National, and enjoined the Commissioner of Securities from enforcing the Takeover Act.

In accordance with the federal law which requires a tender offeror to commence or withdraw its tender offer no later than five business days following the announcement of the material terms of the offer, National formally commenced its tender offer for LLC shares by filing a Schedule 14D–1 with the Securities and Exchange Commission ("SEC") on September 14, 1981. Beginning at midnight, October 2, 1981, National may purchase any shares of LLC common stock tendered to it. By its terms, the tender offer expires on October 9, 1981.

### II.

National challenges several sections of the Takeover Act, Section 409.500 *et seq.*, RSMo (1978), on the grounds that they violate the Supremacy and Commerce clauses of the Constitution, and deprive National of rights, privileges and immunities secured by federal law. In particular, National alleges that Section 409.515.1 is void under the Supremacy Clause because its pre-commencement notification requirement conflicts with Rule 14d–2 of the Williams Act, that Sections 409.515.1 and 409.530 are void under the Supremacy Clause because their

administrative and hearing review procedures conflict with Rule 14d–7 of the Williams Act, that Sections 409.510(6) and 409.-515.2 are void under the Supremacy Clause because they require a tender offeror to provide information not required to be disclosed under the Williams Act, that Section 409.505(3)(d) is void under the Supremacy Clause because it exempts from regulation those tender offers recommended by the target company's board of directors while subjecting to further regulation those offers not approved by the target company's board, that Sections 409.515.3 and 409.520 are void under the Supremacy Clause because they upset the neutral balance between the offeror and the offeree company required by the Williams Act by discriminating with respect to the ability of the offeror and offeree to communicate with the shareholders of the company, that Section 409.510(2) is void under the Supremacy Clause because its requirement that shareholders' deposit rights must be extended for at least twenty-one days after the amendment of any offer conflicts with Rule 14e–1(b) of the Williams Act, that Section 409.-510(3) is void under the Supremacy Clause because its requirement that shareholders' withdrawal rights must be extended for at least twenty-one days after the amendment of any offer conflicts with Rule 14d–7 of the Williams Act, and that Sections 409.-505(3)(d), 409.510(2)–(6), 409.515 and 409.520 are void under the Commerce Clause because they excessively burden interstate commerce.

The defendants have decided not to introduce proof or submit arguments in support of the constitutionality of the Takeover Act in light of this Court's recent ruling in a similar case. *See, Empire, Inc. v. Ashcroft,* 524 F.Supp. 898 (W.D.Mo.1981). The defendants have not consented to the entry of a preliminary injunction with respect to defendant Schoeberl's enforcement of the Takeover Act; rather, they have asked the Court to incorporate on their behalf the defense arguments raised in the *Empire* case. The Court has reviewed those arguments, but is, nonetheless, compelled to adhere to its reasoning in *Empire*. Since

the grounds asserted by National in support of its challenge of the constitutionality of those provisions of the Takeover Act previously cited are identical to the grounds considered by this Court in *Empire*, this Court enters its order finding Sections 409.505(3)(d), 409.510(2)–(6), 409.515 and 409.520 of the Takeover Act unconstitutional and enjoins the defendants LLC and Schoeberl from invoking or enforcing those provisions of the Takeover Act against National.

### III.

National also challenges several sections of the Insurance Act, Section 382.040 *et seq.*, RSMo (1978), on the grounds that they violate the Supremacy and Commerce clauses of the Constitution, and deprive National of rights, privileges and immunities secured by federal law. In particular, National alleges that Sections 382.040 and 382.060 are void under the Supremacy Clause because their administrative hearing and review procedures conflict with Rule 14d–7 of the Williams Act, that Section 382.050 is void under the Supremacy Clause because it requires a tender offeror to provide information not required to be disclosed under the Williams Act, that Section 382.060.1(4) is void under the Supremacy Clause because the power of the Director of Insurance to evaluate the fairness of the offer conflicts with federal policy which permits investors to make their own decisions with respect to tender offers, and that Sections 382.040, 382.050 and 382.060 are void under the Commerce Clause because they excessively burden interstate commerce.

The defendants contend that these Insurance Act provisions are valid under the Supremacy Clause because a state may validly regulate in an area of commerce even though Congress has passed legislation in the same field, that the provisions do not excessively burden interstate commerce because they serve a legitimate state interest and are applied non-discriminatorily, and that Section 1983 of the Civil Rights laws provides no basis for injunctive relief. The General Counsel for the Missouri Division

of Insurance advised National that the Division would seek to enforce the Insurance Act to the extent that the Act applied to National's tender offer. National, having been granted a temporary restraining order enjoining enforcement of the Insurance Act, now seeks a preliminary injunction.

In order to determine whether a preliminary injunction should be issued or denied, the Eighth Circuit requires this Court to evaluate the circumstances of a particular case in accordance with the following four factors:

1. The probability that the moving party will succeed on the merits of the case;
2. The threat of irreparable harm to the moving party;
3. The state of the balance between the harm that granting the preliminary injunction will inflict on other parties to the litigation; and
4. The public interest.

*Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). An analysis of the circumstances posed by this case in light of those four factors compels this Court to conclude that a preliminary injunction enjoining the enforcement of the Insurance Act against National's tender offer must issue.

### A. *Probability that National Will Succeed on the Merits*

The director of the Division of Insurance can presently impose all the regulatory requirements of the Insurance Act challenged by National solely because National has commenced a tender offer for the stock of a company which controls a domestic insurance company. It is the collective intent of Congress, however, to subject all transactions in securities of insurance companies to the pervasive requirements of the Williams Act. 15 U.S.C. § 78n(d)(1). The express terms of the Williams Act and its regulations require application of the federal tender offer rules even where the tender offer is made for equity securities of the parent of an insurance company subsidiary. *Id.*; 17 C.F.R. § 240.14d–1 (1980). Though the defendants contend to the contrary, the

application of the Williams Act to securities transactions involving insurance companies is consistent with the McCarran-Ferguson Act, 15 U.S.C. § 1012. As the Supreme Court held in *S. E. C. v. National Securities, Inc.*, 393 U.S. 453, 460, 89 S.Ct. 564, 568–69, 21 L.Ed.2d 668 (1969), a state which seeks to regulate transactions in securities of an insurance company is engaged in "the regulation of securities" rather than the regulation of the "business of insurance." Under those circumstances, the McCarran-Ferguson Act is not an impediment to the application of the Williams Act. Because Sections 382.040, 382.050, 382.060 and 382.060.1(4) of the Insurance Act empower the Director to regulate the relationship between a stockholder and the company in which he owns stock, the Director can engage in the regulation of securities. This power is clearly preempted by the Williams Act and, as the *National Securities* case makes manifest, is not protected by the McCarran-Ferguson Act. *National Securities, supra*, 393 U.S. at 460, 89 S.Ct. at 568–69.

Section 382.040 of the Insurance Act prohibits the making of a tender offer until the offeror has filed an information statement with the insured and until the offer has been approved by the Director in an administrative hearing. This pre-commencement notification requirement conflicts with Rule 14d–2(b) which requires an offeror to commence or abandon its tender offer within five business days of the disclosure of the material terms of the offer. State statutes which require advance public disclosure of a tender offer more than five business days prior to commencement of the offer repeatedly have been found to be preempted by the five-day provision of the SEC rule. *Empire, supra*, at 904–905; *Kennecott Corp. v. Smith*, 637 F.2d 181, 191 (3d Cir. 1980); *Kelly ex rel. McLaughlin v. Beta-X Corp.*, 103 Mich.App. 51, 302 N.W.2d 596, [Current] Fed.Sec.L.Rep. (CCH) ¶ 97,897 (Mich.App.1981); *Eure v. Grand Metropolitan Ltd.*, [1979–1980] Fed.Sec.L.Rep. (CCH) ¶ 97,383 (N.C.Super.Ct.1980).

Sections 382.040 and 382.060 delay a tender offer by requiring the Division of

Insurance to call a hearing before the offer may be consummated. The Division is authorized to take sixty days from the date of filing notice of the offer in reaching an adjudication. Because appellate review of the Director's decision is permitted, further delay may occur. *See,* Section 382.300, RSMo (1978). The SEC regulations, in contrast, authorize an offeror to purchase shares fifteen days after the commencement of the offer. 17 C.F.R. § 240.14d–7 (1980). These hearing and appellate review provisions are invalid under the Supremacy Clause. *See, Empire, supra,* at 902; *MITE Corp. v. Dixon,* 633 F.2d 486, 498 (7th Cir. 1980), *Kennecott v. Smith,* 507 F.Supp. 1206, 1216 (D.N.J.1981).

Section 382.060.1(4) provides that a tender offer may not be consummated if the Director finds the terms of the offer to be unfair and unreasonable to the security holders of the insurer. This review encroaches on investor autonomy in violation of the congressional determination that shareholders should make their own investment decisions with respect to the merits of the tender offer. The Williams Act is designed to afford shareholders a fair opportunity to make investment decisions. *See,* H.R.Rep.No.1711, 90th Cong., 2d Sess. at 3 (1968); S.Rep.No.550, 90th Cong., 1st Sess. at 3 (1967), U.S.Code Cong. & Admin.News 1968, p. 2811. *See also, MITE Corp., supra,* at 493–94; *Hi-Shear Industries, Inc. v. Campbell,* [Current] Fed.Sec.L.Rep. (CCH) ¶ 97,804 (D.S.C.1980).

Sections 382.040, 382.050 and 382.060.1(4) require the offeror to provide information to the Director and to the insurer which is not required by the Williams Act. *See,* 17 C.F.R. § 204.14d–3 (1980). Because onerous disclosure requirements tend to tip the balance of regulation in favor of the incumbent management of a target company, Congress deleted the type of detailed reporting requirements that are present in the Insurance Act. 111 Cong.Rec. 28257–59 (1965). *See generally, Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979); *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); *Ron-*

*deau v. Mosinee Paper Corp.,* 422 U.S. 49, 58, 95 S.Ct. 2069, 2075–76, 45 L.Ed.2d 12 (1975).

In a case bearing some resemblance to the case at bar, a district court held that state insurance regulations must be consistent with the Williams Act in order to enjoy constitutionality. *Sun Life Group, Inc. v. Standard Life Insurance Co.,* Slip Op. 80–245C (S.D.Ind., March 12, 1980). The target company in the *Sun Life* case contended that the state insurance law should bear a construction which prohibits a tender offeror from commencing an offer without the prior approval of the Commissioner of Insurance. In rejecting the target company's contention, the court concluded that the construction pressed by the target company would place the Indiana Insurance Act in conflict with Rule 14d–2(b) of the Williams Act. *Id.* Though *Sun Life* is not squarely on point, this Court finds the opinion to be persuasive authority in support of its finding the above cited sections of the Missouri Insurance Act to be eclipsed by federal law. This Court is convinced that these sections of the Insurance Act impermissibly grant the Director authority to regulate securities. *National Securities, supra,* 393 U.S. at 461, 89 S.Ct. at 569.

With respect to National's Commerce Clause challenge, it is clear that the Insurance Act might impose burdens on interstate commerce. The disruption of interstate commerce can only be justified by a legitimate local interest. *Lewis v. BT Investment Managers, Inc.,* 447 U.S. 27, 35, 100 S.Ct. 2009, 2014, 64 L.Ed.2d 702 (1980). The defendants allege that the challenged sections of the Insurance Act are legitimate because the sections provide protection for the state's insurance companies and those companies' policyholders. These legitimate interests, however, are not destroyed by this Court's decision to declare certain sections of the Insurance Act unconstitutional. The Director may still engage in the regulation of the "business of insurance" as permitted by the McCarran-Ferguson Act. *National Securities, supra,* 393

U.S. at 459–60, 89 S.Ct. at 568. For example, Section 375.163 provides that the Superintendent of Insurance can revoke an insurer's authority to transact business if the managing officers or persons who control the officers are found "to be of known bad character or to be so incompetent or untrustworthy as to make the proposed operation hazardous to the insurance buying public. . . ." Sections 375.930 through 375.948 protect policyholders from deceptive practices. Section 375.445 provides that an insurer's license can be revoked or a civil action instituted for fraudulent operation of the company. Sections 376.170, 376.280, 382.250, 382.270, 382.280 and 382.290 insure that the financial integrity of an insurance company cannot be jeopardized by questionable management practices. Moreover, an entire chapter of the Missouri statutes is devoted to the content and form of credit life insurance policies, and to the rates which might be charged. Section 385 *et seq.*, RSMo (1978).

The action of this Court, therefore, hardly impairs the legitimate state interest in the regulation of the business of insurance. To uphold the challenged sections of the Insurance Act would permit the state to gain jurisdiction over a tender offer and to halt all purchases of stock merely on account of the fortuitous circumstance that the target company controls a domestic insurer. Since the Division of Insurance's interest in protecting policyholders does not extend to the regulation of securities, the challenged sections of the Insurance Act pose a significant burden on interstate commerce.

■ National has likewise asserted federal rights, privileges and immunities that are subject to protection under Section 1983 of the Civil Rights laws. The defendants' assertions to the contrary ignore the rights which National may enjoy under the Commerce Clause and Williams Act. National has a right under the Commerce Clause to engage in interstate commerce unburdened by any state regulatory requirement which conflicts with paramount federal law. *Crutcher v. Kentucky*, 141 U.S. 47, 11 S.Ct.

851, 35 L.Ed. 649 (1891). Consequently, National is entitled to proceed with its tender offer in accordance with the federal law embodied in the Williams Act. *Kennecott v. Smith*, 637 F.2d 181 (3d Cir. 1980).

The greater weight of legal authority compels this Court to conclude that National will succeed on the merits of its challenge of Sections 382.040, 382.050, 382.060, 382.080, 382.250, 382.260, 382.270 and 382.300 of the Missouri Insurance Act.

### B. *Threat of Irreparable Harm to National*

National's compliance with the Insurance Act will result in delays which are not contemplated by the Williams Act. The waiting periods imposed by the Insurance Act substantially augment the likelihood that National's tender offer may not succeed. Under the circumstances of a tender offer, delays, in and of themselves, constitute irreparable harm. *Kennecott Corp. v. Smith*, 637 F.2d 181, 188 (3d Cir. 1980). National would suffer a substantial loss in terms of the resources expended in anticipation of the offer and the dissipated business opportunity.

### C. *Balancing of Harms Borne by All Litigants*

The defendants allege that they will be irreparably harmed by the issuance of a preliminary injunction because an injunction would leave the state of Missouri powerless to investigate the tender offeror's probity and the policyholders without a voice in the change of control of the insurance company. The defendants' fears are overstated because this Court is not declaring the entire Insurance Act unconstitutional. *Cf. Roussel v. Boren*, Slip op. 78–2345 (E.D.La.1978) (court refused to overturn an entire insurance act). As previously discussed in this opinion, provisions of the Insurance Act that have not been challenged in this suit provide more than adequate safeguards for those interests of the policyholders advanced by the defendants. *See, e. g.,* Sections 375.163, 375.445, 375.930–375.948, 376.280, 376.380, 376.270, 382.250–382.290 and 385 *et seq.*, RSMo. (1978). The laws ensure that the Director can properly

regulate the business of insurance. LLC does not suffer any injury if the challenged sections are declared unconstitutional. Its shareholders are still afforded the protection of the Williams Act. Though the management of LLC would be deprived of the protection afforded by the built-in delays of the Insurance Act, this type of protection conflicts with the purposes and policies of the Williams Act. *See, Empire, supra,* at 902.

### D. *Public Interest in a Preliminary Injunction*

Public interest favors injunctive relief. Injunctive relief guarantees that the interest of LLC shareholders is advanced by the protections afforded by the Williams Act. Any delay that is occasioned by the application of the challenged sections of the Insurance Act lessen the possibility that the shareholders will ever again be in an investment position which they have a right to be in by virtue of federal law.

### IV.

The defendants have asserted that the Anti-Injunction Act, 28 U.S.C. § 2283, bars this Court from granting the preliminary injunction and that the Abstention Doctrine bars this Court's consideration of National's claim. In accordance with its earlier ruling in the *Empire* case, this Court finds that the Anti-Injunction Act does not bar injunctive relief because National is being deprived of rights, privileges and immunities secured by the Commerce Clause and the Williams Act. These rights are protected by 42 U.S.C. § 1983 which is an express exception to the Anti-Injunction Act. *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Moreover, the Abstention Doctrine does not bar this Court's consideration of National's claim for four reasons. *See generally, Empire, supra,* at 901. First, the state court proceedings do not afford National a plain, speedy, efficient and certain remedy for the review of its federal claim. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975). Second, the Doctrine need not apply where a claim is prosecuted under the Supremacy Clause. *Hagans v. Lavine,* 415 U.S. 528, 550, 94 S.Ct. 1372, 1385, 39 L.Ed.2d 577 (1974). Third, there had been substantial proceedings in this Court before the State Court proceedings were instituted. *Graham v. Breier,* 418 F.Supp. 73, 78 (E.D.Wis.1976). Finally, the challenged sections of the Insurance Act are not ambiguous and, therefore, are not in need of being construed by the state court. *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

### V.

Having concluded that the Anti-Injunction Act and the Abstention Doctrine are inapposite to the circumstances presented by this case, the Court finds that a preliminary injunction must issue. Accordingly, it is hereby

ORDERED that Sections 409.505(3)(d), 409.510(2)–(6), 409.515 and 409.520 of the Missouri Takeover Act are unconstitutional as applied to National's tender offer for the shares of LLC Corporation and that defendants LLC and Schoeberl are enjoined from invoking or enforcing any of these sections against National. It is further

ORDERED that Sections 382.040, 382.050, 382.060, 382.080, 382.250, 382.260, 382.270 and 382.300 of the Missouri Insurance Act are unconstitutional as applied to National's tender offer for shares of LLC Corporation and that defendants LLC and Ainsworth are enjoined from invoking or enforcing any of these sections against National. It is further

ORDERED that each party bear its own costs incurred in these proceedings. It is further

ORDERED that National's right to commence purchasing shares of LLC common stock is stayed until 12:01 A.M., Tuesday, October 6, 1981.