Stewart CASSIDY, an unmarried man, Plaintiff,

v.

Stan BOWLIN, an unmarried man, et al., Defendants.

No. 81–1021–CV–W–5.

United States District Court, W. D. Missouri, W. D.

April 9, 1982.

Donna M. Killoughey, Rodney G. Johnson, McGowan & Johnson, Phoenix, Ariz., Malcolm M. Litman, Mark E. Brown, Fishburn, Gold & Litman, Kansas City, Mo., for plaintiff.

David C. Christian, Kansas City, Mo., for defendants Bowlin, Wild & Scenic Prints, Inc., and himself.

Gregory O. Grounds, Kansas City, Mo., for defendants William and Cora Bowlin.

Roger Hoyt, Kansas City, Mo., for defendant Lee's Printing.

G. Spencer Miller, Kansas City, Mo., for defendant Reliance Printing.

Carter H. Kokjer, Richard R. Johnson, Kansas City, Mo., for defendants Townsend Printing.

Richard D. Rhyne, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, P. C., Kansas City, Mo., for defendant Gazlay Graphics.

## MEMORANDUM AND ORDER

SCOTT O. WRIGHT, District Judge.

The plaintiff, in his action for copyright infringement and unfair competition, moved for a Temporary Restraining Order and a Preliminary Injunction. A hearing on the motion was held on January 26, 1982. At the conclusion of the hearing, the defendants that were present entered into a stipulation agreeing to the issuance of a preliminary injunction. During the

two months following the hearing the parties submitted their proposed Findings of Fact and Conclusions of Law. In order to continue the authority of the preliminary injunction, the Eighth Circuit Court of Appeals requires the continued evaluation of the circumstances of a particular cause in accordance with the following four factors: (1) the probability that the moving party will succeed on the merits of the case; (2) the threat of irreparable harm to the moving party; (3) the state of the balance between the harm that granting the preliminary injunction will inflict on other parties to the litigation; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981); *National City Lines, Inc. v. LLC Corp.*, 524 F.Supp. 906, 910 (W.D.Mo.1981). An analysis of the circumstances posed by the plaintiff's motion for a preliminary injunction in light of the four *Dataphase* factors compels this Court to continue the preliminary injunction (1) enjoining the defendants from infringing the plaintiff's copyrights and from engaging in unfair competition, and (2) impounding all lithographs, negatives, plates and other materials that infringe the plaintiff's copyrights, and that are under the control of or which can be reasonably obtained by the defendants.

## I.

For the purposes of this preliminary injunction, the Court finds the following facts to be true:

1. Plaintiff, Stewart Cassidy, is a successful and respected wildlife photographer who lithographs certain of his photographs and distributes them to chosen outlets which ultimately distribute the lithographs to the public. For example, his lithographs are distributed by the Smithsonian Institute Museum and Yosemite National History Association. Cassidy does business as a sole proprietor at his home in Prescott, Arizona. He has been engaged in lithograph work for at least five years; it constitutes his sole means of employment.

2. Cassidy has taken care in building his reputation as a photographer and producer of wildlife lithographs. He oversees the printing of every lithograph, orders minis-cule changes in coloration and wash where it is necessary to render a self-imposed degree of quality control, and personally stamps one specific corner on the reverse side of each lithograph with a notice of copyright. The plaintiff has stamped his authentication of ownership on his lithographs for at least six years.

3. In addition to the placing of a copyright notice on each lithograph, Cassidy has registered 26 prints with the United States Copyright Office. Fourteen of those registered lithographs comprise the basis of this law suit. Certificates issued for each were effective on May 14, 1981. Cassidy never authorized the reproduction of any of the fourteen prints by any of the defendants.

4. In September of 1977, Cassidy entered into an agreement with Richard King under which King was permitted to distribute the plaintiff's lithographs to wildlife outlets and to college clubs in Madison, Wisconsin. King shipped approximately 22,000 prints to Stan Bowlin and his company, Wild & Scenic Prints, from October of 1977 to April of 1981.

5. In January of 1980, Stan Bowlin hired defendant Lee's Printing Company ("Lee's") to reproduce several of Cassidy's wild animal posters. The owner of Lee's, upon examination of the prints, either did not find a copyright notice on the reverse side of the print or failed to locate the copyright notice.

6. Lee's then hired defendant Gazlay Graphics to perform a four-color separation process on the prints delivered to Lee's by Bowlin. Gazlay Graphics delivered the negatives to defendant Ray Printing Company in February of 1980. Ray produced approximately 8,800 prints on six different occasions and delivered the prints to either Bowlin or Lee's.

7. The same business arrangement was again entered into by Lee's and Bowlin in March of 1980 for the reproduction of several other wild animal prints. Gazlay Graphics inquired of Lee's as to the presence of a copyright problem and was told by Lee's that no problem existed.

8. In April of 1980 Gazlay Graphics arranged for defendant Townsend Printing Company to print 2,000 copies each of four different wild animal prints for Lee's. Townsend performed the work.

9. In August of 1980, Lee's produced 500 prints of five separate wild animals for Bowlin.

10. The plaintiff became aware of Bowlin's activities in April of 1981 when King informed him that Bowlin had returned approximately 9,000 illegal copies of the plaintiff's lithographs to King in an attempt to earn credit towards Bowlin's outstanding account balance. Bowlin then visited Lee's for the purpose of retrieving color negatives and plates, proof sheets and original Cassidy lithographs.

11. In July of 1981, Cassidy hired a private investigator in Kansas City, Missouri to investigate the activities of Bowlin and the companies which had produced the illegal prints. On a visit to Townsend Printing Company, the investigator was presented with eight pieces of film and eight offset plates used by Townsend in the printing of four animal posters for Lee's in April of 1981.

II.

In light of these facts, the Court believes that the plaintiff has satisfied the four *Dataphase* factors and, thus, is entitled to preliminary injunctive relief.

A. *Probability of Success on the Merits.*

■ In order to establish a violation of his exclusive copyright rights, the plaintiff must demonstrate his ownership of the copyright and the unlawful "copying" by a person not authorized to make a copy. *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111 (5th Cir. 1978); *Sid & Marty Krofft Television Production, Inc. v. McDonald's Corp.,* 562 F.2d 1157 (9th Cir. 1977). For the purposes of this preliminary injunction, the Court finds that the plaintiff has demonstrated his ownership of several copyrights. As an owner of copyrights, the plaintiff has the exclusive right to reproduce the copyrighted work and to distribute copies of the work. 17 U.S.C. § 106. The

Court also finds that the plaintiff has demonstrated that unlawful copies of his work were produced without his authorization and that, for the purposes of this preliminary injunction, the defendants infringed the copyright. 17 U.S.C. § 501. Thus, there is a high probability that the plaintiff will succeed on the merits of his copyright infringement, claim.

■ In order to establish a violation of his federal and common law unfair competition claims, the plaintiff must show, in essence, an inequitable pirating of the fruits of his labors and the resulting gain of unearned commercial benefit by the "pirate." 15 U.S.C. § 1125; *Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.,* 633 F.2d 746 (8th Cir. 1980). Under the federal law, the unfair competition must take place in interstate commerce. *Metric & Multistand and Components v. Metric's, Inc.,* 635 F.2d 710 (8th Cir. 1980); *Federal-Mogul-Bauer Bearings, Inc. v. Azoff,* 313 F.2d 405 (6th Cir. 1963). From the evidence presented at the hearing on the preliminary injunction, the Court finds that there is a high probability that the plaintiff can successfully demonstrate that there has been an inequitable pirating of the fruit of his labors and that the pirating has taken place in interstate commerce.

B. *Threat of Irreparable Harm to Cassidy.*

■ The irreparable harm to plaintiff is clear. The copyright infringements have automatically divested him of the exclusive control over his unique intellectual property. Cassidy's business reputation and goodwill have been placed in jeopardy because he has been unable to exercise control over the quality of his copyrighted work. It may be impossible for him to gather sufficient proof of the precise measure of his damages since it may be impossible to ascertain to what extent the public has come to associate the plaintiff's name with the inferior works.

C. *Balancing of Harms Borne by All Litigants.*

The defendants have stated that they do not object to the imposition of a prelimi-

nary injunction so long as they are given the opportunity to demonstrate that they are not culpable. They bear no harm by the issuance of a preliminary injunction. Thus, balancing is not required in this case.

D. *Public Interest in a Preliminary Injunction.*

■ Public interest favors injunctive relief. The public must be protected from the distribution of infringed copyrighted works and must be assured that the art which it purchases is what the art purports to be.

### III.

For all of these reasons, it is hereby

ORDERED that the defendants are preliminarily enjoined from infringing the plaintiff's copyrights and from engaging in unfair competition. It is further

ORDERED that the defendants impound all lithographs, negatives, plates and other materials that infringe the plaintiff's copyrights and that are under the control of or which can be reasonably obtained by the defendants.